76,998-02

Paul R. Desilets
T.D.C.J. 1581093
7405 Hwy 75 S.
Huntsville Texas 77344
Goree Unit
August 24 2014

Mr. Abel Acosta, Clerk
Court of Criminal Appeals
P.O. Box 12308
Capitol station
Austin Texas 78711

RE: Cause No. 08-12-11262-CR, I,II, Paul R. Desilets v. State of Texas

Dear Mr. Acosta,

Please find enclosed Applicant's Objection To The States Answer
With AnObjection To the Findings Of Facts And Conclusion Of Law. Could you please file
this with the Honorable Court of Criminal Appeals and bring it to the attention of
the Court. Could you also please notify Applicant of the reciept and filing of this
Objection.

Thank You for your attention in this matter.

Respectfully Submitted

Paul R. Desilets-Applicant

RECEIVED IN
COURT OF CRIMINAL APPEALS
SEP 01 2015
Abel Acosta, Clerk

CAUSE NO. 08-12-11262-CR-I,II

PAUL R. DESILETS                       §        IN THE DISTRICT FOR
                                       §
V.                                     §        THE 359th JUDICIAL DISTRICT
                                       §
THE STATE OF TEXAS                     §        MONTGOMERY COUNTY, TEXAS


OBJECTION TO STATE'S THIRD ANSWER INCLUDING STATE'S
FINDING OF FACTS AND CONCLUSION OF LAW
AND NON-RULING OF MOTIONS FOR HABEAS PROCEEDINGS

TO THE HONORABLE JUDGE OF THE 359th J.D.C. OF MONTGOMERY COUNTY, AND THE HONORABLE
JUSTICES OF THE COURT OF CRIMINAL APPEALS.


**NOW COMES,** Paul R. Desilets, Applicant, in the above styled and numbered
cause in a post conviction habeas corpus, Pursuant to Article 11.07 of the Texas
Code of Criminal Proc. and files this his Objection To The State's Third Answer
Including The State's Finding Of Facts And Conclusion Of Law, and Non-Ruling Of
Motion For habeas proceedings, Under Article 33.1 of the Rules Of Appellate Procedure.


In Support of this Objection Applicant will show the Honorable Court's the
following;


I.     HISTORY

Applicant was charged with two counts of Intoxication Assault. Applicant plead
not guilty claiming he was the passenger of the vehicle. Consequently, due to the
District Attorney withholding exculpatory and mitigating evidence, along with his
ineffective assistance of counsel, on May 21, 2009, a jury found Applicant guilty
and assessed punishment at five years on count I, and Six years on count II.


1.

The judgement was read into open Court and Applicant began serving his sentence on May 21, 2009. On July 8, 2011, Applicant filed his first writ of habeas corpus requesting an out-of-time P.D.R. due to ineffective assistance of appellant counsel. On April 20, 2012, Applicant was Mandated a out-of-time P.D.R. No. PD-0583-12. On December 17, 2012, The P.D.R. was denied by the C.O.C.A. On March 9, 2013, Applicant filed a Writ of Certiorari in the Supreme Court and on September 13, 2013, it was placed on the docket at No. 13-6927. On November of 2013 the Writ of Certiorari was dismissed. On October 6, 2014, Applicant filed his second application for Writ of Habeas Corpus under Article 11.07, along with his Memorandum, Appendix of Exhibits, and several Motions. On October 29, 2014 Applicant recieved the State's answer with Finding of Facts and Conclusion of Law-citing non-compliance with 73.1 and requesting dismissal. On November 14, 2014, Applicant filed his Amended memorandum in compliance with 73.1 of the R. of App. Proc.. On November 20, 2014, State filed its Motion to vacate it's Finding of Facts and Conclusion of Law and put forth a Designation of issues on ineffective assistance of counsel. On November 24, 2014, Applicant filed his First Objection to State's answer and non-ruling on Motions. On December 1, 2014, Applicant filed his Second Objection to State's Finding of Facts and Conclusion of Law. On December 26, 2015 State filed the Affidavit of John Choate responding to designating issues before the Court. On January 21, 2015, Applicant filed his Objection to the Affidavit of John Choate.(see appendix A) On June 6, 2015, Applicant filed a Writ of mandamus to compel the trial Court to proceed in the habeas corpus proceedings, that more than 180 days have elapsed. On July 6, 2015, State put forth it's unsigned answer with finding of Facts and Conclusion of Law. On July 29, 2015, The Honorable Court of Criminal Appeals filed it's Order requesting Respondent to answer within thirty days, and held Mandamus in abeyance until Respondent responds.

Applicant now files his Objection under 33.1 of the R. of App. Proc., and Objects to the State's Third Answer to his Application for Habeas Corpus with a proposed Finding of Facts and Conclusion of Law, and the Court's Failure to Rule on any of Applicant's Motions before the Court.

Applicant would notify the Court that in his trial proceeding he had two Court Reporters, this information could be important in obtaining a complete copy of the record for the Court of Criminal Appeals. Nancy Eleby, was the Court reporter on may 18, 19, 20, 2009, and reported volumes 1, 2, 3, 4, 5, 6, 7, 8, 9, & 13. Darlene Foreville reported on may 21, and June 1, 2009, and reported volumes 10,11, & 12. (see appendix "F" attached).

2.

## II.   THE REQUESTED RELIEF SHOULD BE GRANTED

In the present post-conviction habeas corpus proceeding Applicant has put forth his Application, Memorandum, Amended Memorandum, and a preponderance of evidence contained in his Appendix of Exhibits which brings forth exculpatory and mitigating evidence withheld by prosecuting district attorney Rob Fryer during the trial. Therefore, the Court will find that the State's Finding of Facts and Conclusion of Law relative to Mr. Desilets's fundermental and constitutional errors are not supported by the record. The origin of a prosecutors duty to disclose information to a defendant can be traced to the United States Supreme Court decision in Mooney v. Hulolan, 294 U.S. 103, 55 S.Ct.340, 79 L.Ed. 791 (1935).

Mr. Desilets in his habeas proceedings has shown that he was denied a fair trial. One of those reasons was the State's failure to disclose favorable evidence to the defense during the trial, other instances include; admitting a unlawfull B.A.C. test into evidence which was obtained without a warrant, another was relied on hearsay evidence with no indica of reliability and then disregarding the disclaimer on the test stating "do not use for non-medical purposes" do to the inadequatecy of that test. This compounded with the fact Fryer withheld a material witness favorable to the defense for as long as he could and then threatend the material witness with inprisonment if she did not change her testimony,which was she saw the driver of the car flee the scene of the accident. This testimony would have bolstered the claim of actual innocence for Mr. Desilets.

Consequently, these are some of the same tactics used by counsel Ken Anderson in the Michael Morton case (who brought more openness to the discovery process) and Kelly Seigler, legendary Houston attorney who has been accused of withholding evidence as a district attorney in several cases. Now here it is-the same pattern and pratices in which A.D.A. Fryer used to prosecute Mr. Desilets. To state that Fryer is, as a prosecutor, unprofessional and continually pushes the envelope of what he could legally say and do is an understatement.

Information collected by prosecutors or police that could help the defense is known as"Brady Material" because of the U.S. Supreme Court case that decided the issue in Brady v. Maryland, 33 S.Ct. 1194, 10 L.Ed.2d 215 (1963). District attorneys have aspecial set of ethics to uphold and in the case before us none were upheld.

The Applicant Mr. Desilets in the above case has in fact above and beyound met his burden of proof and should be in all things Granted relief.

3.

## OBJECTION TO STATE'S ANSWER OF
## INEFFECTIVE ASSISTANCE OF COUNSEL AND FAILURE TO INVESTIGATE

A defendant in a criminal case is entitled to reasonably effective assistance of counsel. That standard has been adopted not only in Texas, but by all the Federal Courts of Appeals and the Supreme Court. Stated morefully, the standard is "counsel reasonably likely to render and rendering reasonably effective assistance" In Texas, whether this standard has been met is to be judged by the totality of the representation. It is fundamental that an attorney must have a firm command of the facts of the case as well as the law before he can render reasonably effective assistance of counsel.

A natural consequence of this notion is that counsel also has a responsibility to seek out and interview potential witnesses and failure to do so is to be inefective, if not incompetent, where the results is that any viable defense available to the accused is not advanced. It is fundamental that an attorney must aquaint himself not only with the law but also the facts of the case before he can render reasonably effective assistance of counsel **that burden may not be sloughed off to an investigator.** It is counsel's responsibility. Butler v. State, 716 S.W.2d 48 (Tex.Crim.App.1986).

In Bulter the Court of Criminal Appeals held an affirmed an order by the Court of Appeals reversing Applicant's conviction due to the defense counsel's representation which fell below an objective standard of reasonableness, and Applicant was prejudiced by that failure of counsel to seek out and interview witnesses. Counsel Choate admitts and affirms in his sworn statement that he did not interview any witnesses on his clients behalf and that he left this task up to an investigator a Mr. James Townsend. (Choate affidavit at 1-2) Therefore, Applicant has established that he was prejudiced by his attorney's deficient performance, and there is a reasonable probability that but for counsel's ineffective assistance , the results of the proceedings would have been different.

The State next would like the Court to believe that trial counsel Choate was not ineffective for failing to notify, inform, and basicly represent his client during the cumulation of Applicant's sentences. However, the Supreme Court in Strickland has held from counsel's function as assistant to defendant derive the overarching duty to advocate defendants cause and more paticular duties to consult with the

4.

defendant on important decisions and to keep the defendant informed of important developments in the coures of the prosecution. U.S.C.A. Const. Amend. VI. Strickland Id. at 2064; Powell v. Alabama, 287 U.S. at 68-69, 53 S.Ct. at 63-64. As well the type of breakdown in the adversal process that implicates the Sixth Amend. is not limited to counsel's performance as a whole; specific errors and omissions may be the focus of a claim of ineffective assistance of counsel as well.

Applicant's trial was unfair due to the fact he was denied counsel at a critical statge of his trial. United States v. Cronic, 104 S.Ct. 2044 (1984). Further, a defendant may not have a cumulation order entered in a case once he has begun to serve his sentence. Ex parte Barley, 842 S.W.2d 694, 695 (Tex.Crim.App.1992). In Desilets, as in Madding, the jury assessed his punishment and the Judge in accordance with 42.03 pronounced the sentence orally while Desilets was in the courtroom, and Desilets was removed from the courtroom and began serving that sentence. No written judgement was signed untill 13 days later, unopposed consecutive sentences were added to his written judgement.Again, this was clearly after Desilets was removed from the courtroom and began serving his sentence on May 21, 2009.

Once a defendant is removed from the courtroom and begins serving his sentence, it is to late to cumulate the sentence imposed with an earlier one. Gray v. State, 291 S.W.3d 555, 558 (Tex.Crim.-Houston [14th dist.] 2009, no pet.); Ex Parte Madding, 70 S.W.3d 131 (Tex.Crim.App.2002). The record clearly reflects that after the Court announced sentence defendant was removed from the courtroom and began his sentence. (appendix of exhibits "E" judgement of conviction by jury).

In conclusion, the State claims this complaint has been rejected by the Court of Appeals in Desilets v. State, No. 09-12-00562-Cr 2013, WL 395895 (Tex.App.-Beaumont Jan. 30, 2013, no pet.). The State is incorrect. The Appeals Court preserved the issue to be addressed in a habeas proceeding. Citing: [1] "To resolve the jurisdictional and procedural issues before us, we need not determine whether the trial Court correctly ordered cumulation, and the issue might arise in subsequent habeas proceedings. Accordingly we do not address the merits of the issue attempted to be raised in this appeal".(see attached appendix "B"). Counsel was clearly ineffective for not representing his client during a critical state of his trial or objecting to the illegaly stacking of his clients sentences as he so admitts. (Choate affidavit at 5)

Applicant has established that counsel was ineffective for lack of a pre-trial investigation. Applicant has in fact introduced evidence which was withheld from trial, and obtained in a indapendant investigation, which would have changed the outcome of his trial. Williams v. Taylor, 120 S.Ct. 1495 (2000).

Applicant contends the evidence obtained in his case is legally and factually insufficient to support the trial Court's outcome. That it was illegally obtained without a warrant and presented under the hearsay exception clause with no indica of reliability. Tex. R. Crim. Evid. 803. Expert witnesses on this issue alone would have made a substantial difference in his trial. The State claims that Applicant has failed to show limited knowledge had any effect on counsel's ability to try the case,or what an expert could have added to the defense? The State also points out that counsel Choate is-well qualified for appointment in felony cases. Applicant states this is the first time he has been informed that counsel Choate was appointed by the Court and requests this Honorable Court review Applicant's objection to affidavit of John Choate II. pg.2, Facts Not Apparent From The Record. (appendix "A" enclosed).

An expert on the issue of hearsay evidence would have explained; that there was no indica of reliability which is required by law, and that a disclaimer in the toxiology report stated that the test had not been confirmed and should not be used for non-medical purposes. (see appendic "C" attached). An expert would have brought up several other issues concerning Applicant's blood sample, such as; 1. Distingusing plasma, serum blood, and whole blood. 2. In vivo and invitro variation in blood testing. 3. Medication and disease, 4. Further contamination of blood specimenns. 5. No chain of custody of his blood test. All of which would have educated the jury on the science of blood testing.

An expert witness also would have pointed out that in Desilets's blood test, the antiseptic used to cleanse the area contained alcohol in amounts sufficient to produce measurable amounts of alcohol on a gas chromatograph. In an emergency room settings, it is routine to use an alcohol-based antiseptic to clean the skin. An Expert witness would have given the jury (and defense counsel) the knowledge that a mere fraction of a drop of extraneous alcohol that had been applied to the skin had been responsible for a possible miscarriage of justice. Counsel's ineffective assistance in failing to procure an expert in blood samples and testing undermines any confidence that the outcome would most likely have been different, because, had an expert been procured, a viable strategy would have presented itself. Only then could counsel have made an informative decision regarding his client's strategic avenue most sound at best securing his client's interest in a fair trial.

The State goes on to state, counsel Choate claims 'this was a suppression issue only. An expert would not have helped and may have hurt." (see Choate affid. at 4). However, if Choate had consulted an expert in this area, counsel would have had a better understanding of the Texas Rules of Evidence, R. 803, of the buisness hearsay rule, which states;     Records of regularly conducted activity, a memorandum, report, record, or data compulated, in any form, of acts, events, conditions, opinions, or diagnoses made at or near the time, or from information trasmitted by, a person with knowledge, if kept in the course of a regularly conducted buisness activity.....unless the source of information on the method or circumstances of preparation indicate a lack of truthworthiness. Tex. Rules of Evidence 803(6).

An expert witness would have been able to assist counsel in his theroy of if the test was admissible or not. Where counsel failed to investigate his client's medical treatment an expert also would have brought forward the fact that during the emergency medical treatment of Mr. Desilets, law enforcement was present and never even requested a legal blood test, this do to the fact they knew he was the passenger or the vehicle in the accident not the driver. This fact alone would have assisted counsel in the argument for the exclusion of the blood test under Tex.R.Crim.Evid. 803(a)(b), which states;     Evidence otherwise admissible under Tex.R.Crim.Evid. 803(8) is never the less excluded under Tex.R.Crim.Evid. 803(8)(b), if it constitutes matters observed by police officers and other law enforcement personel. Johnson v. Texas, 959 S.W. 2d 230 (Tex.Crim.App.1997). Further, an expert witness in the forensic consultant ares would have presented to counsel and the jury the existing facts of;

1. Mr. Desilets's injuries were not consistant with the deployment of an airbag in a crash. The facts remain that Desilets's medical records reflect he had no head trauma, no head or facial injuries, bruising, redness, marks, blackeyes, or any head injuries whatsoever, which would have been consistant with the deployment of the airbag upon the driver of the vehicle. Thus, proving that Desilets was in fact the passenger in the vehicle at the time of the crash. (see appendix of exhibits "A", official report from the scene stating airbag was deployed).

2. The fact that all of Mr. Desilets's medical records reflect all of his injuries he sustained in the accident are on the right side of his body, which negate any notion that he was the driver of the vehicle at the time of the crash, and in fact he was the passenger. (see append. of exhibits "B", preliminary radilogy report showing injuries to the right side-passengers side)(and appendix "D" attached).

3. The fact that Mr. Desilets was not at any time placed under arrest or detained by police, nor was a warrant issued for a blood test during his treatment. This was due to the fact police knew he was a passenger on the evening of 12/16/2007, and that the driver had fled the scene of the accident according to witnesses at the scene.

7.

4. An expert then would have introduced the Grand Jury Subpoena's which were used to further a police investigation and to obtain medical records of the passenger in the vehicle without a warrant in the medical treatment of Mr. Desilets. The subpoena's were then sent out to several area hospitals on a fishing expedition for medical records months after the accident,when police could notlocate the driver of the vehicle in the accident. (see append. of exhibits "J"). Thus concluding that Desilets could not have been the driver of the vehicle in the accident. As a result, counsel's failure not to procure expert witnesses was constitutionally ineffective. Ex parte Amezquita,--- S.W. 3d----(Tex.Crim.App.2006) WL3391037. Concluding expert testimony in the above issues would have been benefited Desilets and have changed the outcome of his trial.

## IN THE ISSUE OF THE STATE DENYING AN EXPERT WITNESS

The compulsory process clause provides that in all criminal prosecutions the accused shall enjoy the right....to have compulsory process for obtaining witnesses in his favor. (see supp. mem. gnd. 10, pg. 25-27). This plain language supports the State's argument only if one assumes that the most natural reading of constitutional language is the least meaningfull. For the right to subpoena defense witnesses would be a hollow protection indeed if the goverment could simply refuse to allow subpoena of all defense witnesses to testify.

As several Court's have reconized, the right to subpoena witnesses must mean the right to subpoena them for a useful purpose, and thus necessarily implies a substantive limitation on the goverment's power to prevent the witnesses from testifying. In addressing both the State's claim and counsel Choate's ineffectiveness "the right to offer testimony of witnesses, and to compel their attendance, if necessary, is in plain terms the right to present a defense, the right to present the defendants version of the facts as well as the prosecution's to the jury so it may decied where the truth lies." Washington v. Texas, 388 U.S. 14, 19, 18 L.Ed.2d 1019, 87 S.Ct. 1920 (1967) (emphasis added). The framers of the constitution did not intend to commit the futile act of giving to a defendant the right to secure the attendance of witnesses whose testimony he had no right to use. Id. at 23.

The substantive limitation on excluding criminal defense evidence secured in the plain terms fo the compulsary process is also grounded in the general constitutional guarantee of Due Process. Chambers v. Mississippi, 93 S.Ct. 1038 (9173);Rock v. Arkansas, 107 S.Ct. 2704 (1987); Cane v. Dentucky, 106 S.Ct. 2142 (1986).

The compulsary and due process clause thus require Court's to conduct a searching substantive inquiry whenever the goverment seeks to exclude criminal defense evidence. After all,"[f]ew rights are more fundamental than that of an accused to present witnesses in his own defense." Chambers supra, at 302, 35 L.Ed.2d 297, 93 S.Ct. 1038. the exclusion of criminal defense evidence undermines the central truth-seeking aim of our criminal justice system. United States v. Nixon, 418 U.S. 683, 709 41 L.Ed.2d 1039, 94 S.Ct. 3090 (1974). Because it deliberately distorts the record at the risk of misleading the jury into convicting an innocent person. Surley, the para-mount value our criminal justice system places on acquitting the innocent. eg. in Re Winship, 397 U.S. 358, 25 L.Ed.2d 368, 90 S.Ct. 1068, 51 ohio opo 2d 323 (1970), demands close scrutiny on any law preventing the jury from hearing evidence favorable to the defendant.

In conclusion, counsel's failure to procure expert witnesses and the State's denial of defendant to have an extension to obtain an expert witness in the trial has shown to be constitutionally deficient and prejudiced Applicant denting him a fair trial.

OBJECTION TO STATE'S ANSWER OF
FAILURE TO OBJECT-NEGLECTED LEGAL MATTERS-CONFLICT OF INTEREST.

FAILURE TO OBJECT.

Applicant complains that due to his counsel's failure to object at critical times during his trial he was in fact prejudiced and denied a fair trial. In the first instant counsel failed to object to prosecutorial misconduct that amounted to constitut-ional error. The most compelling evidence of counsel's incompetence was his failure to object to very serious instances of prosecutorial misconduct against his client, during the course of his trial. Mr. Desilets's counsel failed to object to prosecuting district attorney Fryer swearing at him and his trial counsel and engaging in a physical altercation. Counsel Choate's failure to reconize that prosecution was continually making improper comments concerning his client charge against him and charater was a critical error, especially since Desilets's credibility was such an important issue in the case.

Mr. Desilets asserts he was denied a fair trial because of the prosecutors egregious acts of misconduct. After a review of the record Applicant is confident the Court will agree that he was not afforded a fair trial on account of the State's prosecutor's repeated disregard for the defendants constitutional rights. Doyle v. Ohio, 426 U.S. 610, 619, 96 S.Ct. 2240, 2256, 49 L.Ed.2d 91 (1976).

9.

And of course, in reviewing his actions prosecutor Fryer denies that he ever engaged in any altercation with defense counsel, however sworn statements are not alone sufficient proof. Ex Parte Empey, 757 S.W.2d 771, 775 (Tex.Crim.App.1988). The record will reflect otherwise. As well counsel Choate did not include the altercation in his affidavit, but sidesteped the issue.

This lack of action to object on counsel's part in fact prejudiced his client during his trial. Counsel Choate also failed to object to prosecutor Fryer threatening of Ms. King, a material witness for the defense, who stated on the record that she was in fact threatened by the prosecution with criminal charges and imprisonment if she did not change her eyewitness testimony. Ms. King would have testified that she saw the driver who fled the scene of the accident and that Mr. Desilets was not the driver of the vehicle. Ms. King would have testified to this factual account if not for prosecution threatening her. An objection by defense counsel would likely have been sucessful, and counsel's failure to object prevented Applicant from presenting exculpatory evidence of his actual innocence.

A prosecutor violates due process by threatening criminal consequences for a potential defense witness who is willing to testify for the defendant at trial, and that threat actually intimidates the witness from offering exculpatory testimony. Bryany v. Scott, 28 F.3d 1411, 1418 (5th cir. 1994). As a consequence of counsel's actions, Applicant was deprived of his constitutional right to effective assistance of counsel and due process of law. Applicant states under Strickland he has established prejudiced and a reasonable probability that, but for counsel's unprofessional errors, the results of the proceedings would have been different.

## NEGLECTED LEGAL MATTERS AND CONFLICT OF INTEREST

On this issue Counsel Griffin has already been found ineffective by the Court of Criminal Appeals for failing to include his client in the direct appeal and failing to properly advise his client during and after the appeal process, with the Court of Criminal Appeals citing; Ex parte Wilson, 956 S.W.2d 25 (Tex.Crim.App.1997).see Desilets, 2012, WL 333809.;(append. of exib."G"). In the State's answer they contend "there is no requirement that appellant counsel consult with his client when preparing an appeal that is based entirely on the record." However,the Court of Criminal Appeals has held in Jarrett, we determine that a 'lawyer should take whatever steps are necessary to protect the defendant's right to appeal." Ex Parte Jarett, 891 S.W.2d 935 (Tex.Crim.App.1994).

10.

The Court of Criminal Appeals held that trial counsel retained or appointed,... has the duty, obligation and responsibility to consult with and fully advise the client concerning the meaning and effect of the judgement rendered by the Court, his right to appeal from the judgement, the necessity of giving notice of appeal and taking other steps to pursue an appeal as well as expressing his professional judgement as to the possible grounds for appeal and there merit, and delineating advantages and disadvantages of appeal, Axel, 757 S.W.2d at 374.

Further, for appellate counsel Griffin to state in his affidavit; "There were no signs that trial counsel was deficient and that there was no need to contact Applicant (after his client tried to contact him several times) makes it apparent on its face that counsel worked under a conflict of interest on behalf of the State.(amend. mem. at 17-18). The State also concludes "that Applicant has failed to allege what he would have told appellate counsel if there had been a consultation." Again,it is apparent from the current proceedings in this Art. 11.07 habeas that his client would have presented sixteen grounds for Appeal if there had been a consultation. This in fact concludes once again that appellate counsel Griffin did in fact neglected legal matters entrusted to him, and labored under a conflict of interest on behalf of the State.

Therefore, Applicant has proven that "counsel's decision not to raise a particular point of error was objectively unreasonable, and there is a reasonable probability that, but for counsel's failure to raise that particular issue, he would have prevailed on appeal." Ex Parte Flores, 387 S.W.3d 626, 639 (Tex.Crim.App.2012).


OBJECTION TO STATE'S ANSWER FOR
FAILURE TO RAISE CLAIM ON APPEAL AND REMAINING TRIAL ERROR'S


It is aparent that the State is in contradiction of itself once again, for in C, remaining trial errors, pg. 17 of the State's answer, it states; "Each of the claims is not cognizable on habeas review because they could have been raised on direct appeal." Ex Parte Crozata, 220 S.W.3d 518, 520 (Tex.Crim.App.2007). Thus, in a turn of opinion the State has reconized and is in agreement with Applicant that all issues listed by the State which were not raised on direct appeal by appellate counsel Griffin are do to (1) Counsel's decision not to raise a particular point of error was objectively unreasonable, and (2) there is a reasonable probability that, but for counsel's failure to raise that particular issue, he would have prevailed on appeal. Ex Parte Flores, 387 S.W.3d 626, 639 (Tex.Crim.App.2012).

11.

In conclusion, as listed in the State's answer under remaining trial error's pg. 17, " an attorney "need not advance every argument, regardless of merit, urged by Appellant," (although applicant was excluded from his direct appeal) but if " appellant counsel fails to raise claim that has indisputable merit under well-settled law and would necessarily result in reversible error, appellant counsel is ineffective for failing to raise it." Applicant has therefore established that he was denied constitutionally effective assistance of counsel both during his trial and on direct appeal, as the State agrees, and that ineffectiveness fell below an objective standard of reasonableness to which Applicant was prejudiced, and but for, counsel's unprofessional error's, the results of the proceedings would have been different. U.S.C.A. Const. Amend. VI.


## REMAINING TRIAL ERROR'S


The State in this part of it's answer tries to avoid several grounds of fundamental and constitutional merit's. Obviously, to consolidate and side step issues and the fact that Applicant was not allowed a fair trial.

NINTH GROUND:

In Applicant's ninth ground he brings forth the fact that prosecuting attorney Rob Fryer tampered, with and fabricated physical evidence in violation of Texas Penal Code § 37.09, and § 37.10, which State;

> Tampering with of fabricating physical evidence.
> (A) A person commits an offense if, knowing that an investigation or official proceeding is pending or in progress, he:
>    (1) Alters, destroys, or conceals any record, document,.... in the investigation or official proceeding, or
>    (2) makes, presents, or uses any record, document, or thing with knowledge of its falsity and with intent to affect the course or outcome of the investigation or official proceeding. Texas Penal Code § 37.09.

> Tampering with a government record
> (A) A person commits an offense if he:
>    (1) knowingly makes a false entery in, or false alteration of, a governmental record
>    (2) makes, presents, or uses any record, document, or thing with knowledge of its falsity and with intent that it be taken as a genuine governmental record
>    (5) makes, presents, or uses a governmental record with knowledge of its falsity
> Texas Penal Code § 37.10.

Therefor, under Texas Exclusionary Rule Article § 38.23 of the Code of Criminal Procedures; any evidence obtained as a result of that law violation is inadmissible at trial. Article § 38.23 Code of Criminal Procedure.

<u>NITH GROUND</u>:                         <u>GRAND JURY SUBPOENA</u>

The use of a Grand Jury Subpoena to further a police investigation has been held in the United States Supreme Cout as wll as the Texas Constitution. <u>U.S.C. Const.</u> <u>Amen. IV, Vernon ann. Tex. Const. Art. 1. § 9.</u> Legislature has not chosen to vest police with subpoena power, it would circumvent legislature to allow police to make good use of a Grand Jury Process in order to do indirectly what they cannot do directly. <u>Port v. Heard, 594 F.Supp 1212, affirmed 764 F.2d 423.</u> (see append. exhibits "J")

## SUFFICIENCY OF A GRAND JURY SUBPOENA WITHOUT A WARRANT

A person does not voluntarily submit to a medical exam, or is in such a serious medical condition that an affirmative statement of submission in unobtainable and presumed, but, this information is aquired and used soley for diagnosis and treatment. It is voluntary only in the sense that it is necessary to receive, what may often be, life sustaining treatment. Once obtained, it may not be browsed through as if it were public record or generally observed by the passerby on the street. The fact that medical records are retained by a doctor or a hospital, and are not solely within the [Applicant] control, should not erode the privacy protections of the <u>Fourth Amendment</u>.

Because of the personal and intimate nature of the information contained in medical records, the federal Court's have held that a Grand Jury Subpoena for such documents intrudes on a reasonable expectation of privacy constitutes a search under the <u>Fourth Amendment</u>.

## REASONABLENESS

The final Constitutional question remains; Was this "search" reasonable under the Fourth Amendment? Here, the Grand Jury did not obtain a warrant, supported by probable cause and issued by a neutrial magistrate, to "search" [Applicant's] medical records. Absent an arrest, the minimum constitutional requirements for a warrantless search are; 1) probable cause that incriminating evidence will be uncovered and, 2) Exigent circumstances justifying the search. <u>Chambers v. Maroney, 399 U.S. 42,</u> <u>90 S.Ct. 1975, 26 L.Ed.2d 419 (1970).</u> This case presents no exigent circumstances. There is little danger that [Applicant] would destroy the evidence or that a delay in obtaining a search warrant would impede the Grand Jury investigation.

13.

Medical records, unlike alcohol in one's blood, does not dissipate over time and justify an immediate search. Schmerber, 384 U.S. at 770-71, 86 S.Ct. at 1835-36. Additionally, it is unclear from the present record whether probable cause existed prior to the subpoena of [Applicant's] medical records.[1.] Absent this preliminary showing of probable couse, a grand jury subpoena for medical records fails to satisfy the requirements iñ the Fourth Amendment since no constitutionally accepatable excuse was proffered precluding the procurement of a warrant. The grand jury subpoena was an unreasonable search of [Applicant's] medical records, thus violating his constitutional rights emanating from the Fourth Amendment.

Applicant was prejudiced and his constitutional right's violated by the trial Court's decision not to suppress the illegal search of his medical records. Applicant contends the regulations provide that the State may not obtain medical records with a grand jury subpoena unless it complies with the relevant requirements of obtaining a subpoena under State law with a signed Judge's warrant. This claim was not addressed in the trial Court or on direct Appeal and is cognizable in a habeas proceeding. Applicnat's complaint is with great merit which entitle's Applicant to relief as he so prays below.


TENTH GROUND:      CHAIN OF CUSTODY:      EXPERT WITNESS:      CONFRONTATION CLAUSE:


Applicant Objects to the State's answer on his tenth ground, where the State alleges a challenge of various motions to suppress. The Supreme Court has held in Pointer v. Texas, that the bedrock procedural guarantee applies to both Federal and State prosecutions and that a unavailable witnesses out-of-Court statements may be admitted so long as it has adequate indica of reliability and falls within a firmly rooted hearsay exception and bears particularized guarantees to trustworthiness. Pointer v. Texas, 380 U.S. 400, 406 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965).

1. In its findings the State never revealed who formed the opinion that Applicant was intoxicated. The records reveal that the officer did not form this opinion on the night of the accident. nevertheless, the officer did not arrest Applicant on the night of the accident and that he was not arrested untill after a review of Applicant's medical records (months later). And at the suppression hearing the trial Judge prohibited discussion on this issue of probable cause. Accordingly, the existence of probable cause was not fully litigated and is not apparent on the face of the record.

14.

In Desilets's case it clearly held none of the above in violation of his constitutional rights. Compounded by the fact the witness against him was kept from cross-examination, and from the trial alltogether, this in violation of his Sixth Amend. Right to confrontation, which called into question the ultimate integrity of the fact finding process. Chambers v. Mississippi, 410 U.S. 284, 295, 93 S.Ct. 1038, 1046, 35 L.Ed.2d 297 (1973), quoting Bergeru v. California, 393, U.S. 314, 315 98 S.Ct. 540,541 21 L.Ed.2d 508 (1969).

This hardly appears to be a simple motion to suppress as the State in its answer would have you believe, but in fact it is a serious violation of a defendant's right. Thus, do to the seriousness and overall importance of this issue and the violation of Mr. Desilets's constitutional rights, Desilets requests that the Court grant relief in his habeas corpus as he so prays below.

ELEVENTH GROUND:      DEADLY WEAPON:    DISCOVERY ORDER:

Applicant Objects to the State's answer in his eleventh ground, for the State is basing their answer on an Appeal in which Applicant was excluded from and this claim was not fully briefed on the totality of its merits. The State also withheld the discovery order from the Court of Appeals, disputing whether such a discovery order was entered or ever existed. (see append. of exib. filed 10/6/14 exib."K" clerks record containing discovery order) This discovery order is contained in the clerks record dated 5/1/2009, in which the State responded to before trial, and again on 5/12/09, with a supplement response.

Mr. Desilets strongly argues that he was denied his due process right to a meaningful notice and a meaningful time to be heard. Lachance v. Erickson, 522 U.S. 262 118 S.Ct. 753, 756 139 L.Ed.2d 695, 700 (1989). The notice of a deadly weapon intent was inadequate to amend the indictment and the notice was not provided within the statutory time before trial with a standing discovery order in place. Applicant was also prejudiced when he was denied a continuance in order to seek expert testimony concerning the deadly weapon amendment. The Court's denial of Applicant's request for a continuance prevented a proper cure to the State's late notice on the deadly weapon issue.

Due to the State's failure to provide adequate notice, Applicant was unable to prepare his defense in violation of constitutional right to due process under the United States and the Texas Constitution. Due to the seriousness of the violation of Desilets's fundermental and constitutional rights, Applicant requests that the Court Grant him relief in his habeas corpus as he so prays below.

15.

TWELFTH GROUND:    SIXTH AMENDMENT RIGHT TO CONFRONTATION

Applicant Objects to the State's answer contending his twelfth ground is one of simple motion to suppress. Applicant argues that his right to confrontation was denied. Even the Court of Criminal Appeals itself has provided that the constitutional right to confront can prevent admissibility even where hearsay exception is applicable. In this case the State provided no evidence to bolster the reliability of the blood test and with held exculpatory evidence from the trial in regards to the test, which stated the test was flawed and not to be used for non-medical purposes. (see append. "C" attached pg.7)

Mr. Desilets was denied the right to confront and cross examin the person who put forth the test and who actually took the blood specimen. Desilets also complains the person who withdrew the blood was not qualified to do so. Tex. Tran. Code Ann. § 724.017(a)(vernon supp. 2009). The State must prove who took the blood test and whether it was a qualified person under State law. Pham v. State, 175 S.W.3d 767 (Tex.Crim. 2005). This clearly shows evidence was obtained in violation of Tex Code of Crim. Proc. Art. §38.23. The Court of Criminal Appeals reversed, holding, in reliance of Ohio v. State, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597,; that although 801(d)(2)(c) had been satisfied, the comfrontation clause established an independant requirement that the goverment as a condition to admission of any out-of-Court statements, must show the declarant's unavailability.

This in fact reaffirmed a longstanding rule that applies a unavailability analysis to the prior testimony of a witness not produced at trial, connot fairly be read to stand for the proposition that no out-of-Court statement can be introduced by the prosecution without showing the declarant in unavailable. concluding, we must refuse to allow the Court to allow the State to "bootstrap" the trustworthiness of other evidence to be admissible under the confrontation clause hearsay evidence, used to convict a defendant must posses an indica of reliability by viture of its inherent trustwothiness, not by reference to other evidence.

The State provided no evidence to bolster the reliability and accuracy of the test, and no witnesses testimony to satisfy the indica of reliability standard. Thus, the trial Court erred and abused its discretion by admitting the test with no indica of reliability and denied Desilets his constitutional right to confrontation. Mr. Desilets request due to the above error's the Court grant his relief from his habeas corpus as he so prays below.

Applicant Objects to the State's answer in his thirteenth and fourteenth grounds, and contends the State's attempt to combine both the grounds, each with outstanding merits, is an attempt to side step the seriousness of the lack of Judicial Procedure and Double Jeopardy placed upon Mr. Desilets. The trial record will clearly reflect the constitutional violations in both grounds. (see amend. memorandum pg. 33-38, attached as appendix"E") But for the sake of economy Applicant will reflect on the double jeopardy. Applicant argues in this ground that he was tried and sentenced by two Judges, with two different sentences in the same trial, this violating his constitutional protection of being twice sentences under double jeopardy.

The State in its finding of facts no. 10, pg. 2, states; "On May 26, 2009, Judge Erwin Ernst prouounced Applicant's sentence and ordered them to be served consecutively." But this fact could not be farther from the truth, in fact Mr. Desilets was in county jail serving his sentence which was read in open Court on May 21, 2009, by the jury as the record of conviction will reflect. (see append. of exhib."E" judgement of conviction)

On June 1, 2009, Desilets was brought back to the convicting Court, and in Judges chambers  in a special setting, the prosecution was presenting to Judge Ernst a stacking order to stack the sentences. This 12 days after Desilets was sentenced in open Court and left the Court to begin serving his sentence. Judge Ernst signed the order and left the proceeding, and even left the Courthouse, leaving Judge Hamilton, recused Judge of said trial to resume the case, even though Desilets and Judge Ernst remain wedded. Judge Hamilton then sentenced Desilets for a second time in open Court, which the record will also reflect and the judgement of conviction will confirm.

However, Judge Hamilton never ruled on any motions, never heard any motions before or during the trial, never addressed witnesses in Court, never addressed the jury during trial, and had no right to resume the trial and to sentence Mr. Desilets for a second time. Thus, violating his right against double jeopardy. Const. Amend. V.

. A Judge who had no knowledge of the case, heard or decided any motions in the case, may not pronounce sentence, let alone sentence a defendant twice. Especially when the sentence arises out of the same criminal episode and prosecuted in a single criminal action. Tex. Penal Code Ann. §3.03(a)(vernon supp.2002); Ex Parte Pharr, 899 S.W.2d 795, 796 (Tex.Crim.App.1995). Applicant was denied a fair trial and the right to be free from double jeopardy in violation of his constitutional rights. Applicant requests the Court grant his relief in this habeas corpus as he so prays below.

FIFTEENTH AND SIXTEENTH GROUND:

## VIOLATIONS OF THE FOURTH, FIFTH, AND FOURTEENTH AMENDMENTS

Applicant Objects to the State's answer on these grounds and the State's attempt to minimize the seriousness of the constitutional violations brought against Mr.Desilets. The set of facts the State adduced as reasons for stopping Desilets do not meet the standards set by Texas and Federal Court's in interpreting the Fourth and Fourteenth Amendment to the Constitution. The cited reasons for the stop ane insufficient because the officer did not state that Desilets was driving in a unsafe manner or dangeriously, Desilets's constitutional rights were violated because the traffic stop was improperly admitted at the punishment stage of his trial. In Desilets's punishment hearing the State showed the jury a video recording of a traffic stop for a pending offense which he was not on trial for and was on bond for at the time of the current trial. during the course of that stop, Desilets was arrested for driving while intoxicated, but was never told that he was under arrest or read his miranda warnings. Portions of the video produced at the punishment stage of the trial contained unconstitutional custodial interrogations. Therefor, the State's use of portions of the video from Desilets's arrest on another matter violated his constitutional rights.

Applicant was denied a fair trial in violation of his Fourth, Fifth, and Fourteenth Amendments to his constitutional rights, and requests that this Court Grant his relief in his habeas corpus as he so prays below.

SEVENTEENTH GROUND:          ACTUAL INNOCENCE:

Applicant Objects to the State's answer in his seventeenth ground, contending that no new evidence has been presented establishing his innocence. However, Applicant has put forth exculpatory and mitigating evidence which was withheld by the prosecuting district attorney during his trial. Mr. Desilets's family in an independent investigation uncovered documents, medical reports, accident reports, and emergency care reports, as well as interviewed several experts, forensic consultants, investigators, medical personel and several people in the justice field to obtain and bring forth·the exculpatory and mitigating evidence in this habeas corpus application, and in the appendix of exhibits. including but not limited to;

18.

Exhibit "A": Auto report site of impact showing damage to the right side of the vehicle, and restraints, air bag deployed, and no injury to head, neck or face, from the scene of the accident on 12/17/07. Which proves Desilets could not have been the driver of the vehicle and was the passenger as he so claims.

Exhibit "B": Primary radilogy report showing injuries to the right side (passenger side) of Desilets and that there were no injuries to his head from the deployment of the airbag. dated 12/17/07, from the scene of the accident. Wich proves that Desilets could not have been the driver of the vehicle and sustain seriously injuries to his right side of his body.

Exhibit "J": Certified mail receipt on the district attorney's letterhead to obtain medical records by subpoena without a warrant to further a police investigation, C.P.D. (conroe police dept.) intake investigation by Sanders, dated 12/19/08.

Exhibit "L": Witness affidavits of Carlos Landa, Debbie Wilkerson, and Manuel Calderon, who were present at trial and both sentences for the Applicant. Showing the Court witnessed double jeopardy.

Exhibit "M":(also included as appendix "C" attached), Forensic report Memorial Herman Hospital Toxiology-Drugs of abuse dated 12/17/07, Disclaimer on report-stating drugs reported as positive have not been confirmed by a second method and should not be used for non-medical purposes. pg.7.

Appendix "D": Memorial Herman health care radiology report showing injuries to Desilets's right side (passenger) as a result of the M.V.C. consistant to damage on the right side of the vehicle. Proving once again that Desilets's injuries are consistant with being the passenger in the vehicle not the driver in the accident, as he so claims.

Appedix "A": Applicant's Objection to Choate's affidavit, containing facts not apparent from the record; A clear account of the fraud Applicant's counsel did while representing him in a Court of law, unknown to Applicant at the time, and is why Choate rendered ineffective assistance of counsel toward his client and sent him to prison.

Applicant strongly argues, in his case, the primary thrust of evidentiary case prepared by the State consisted of coached witnesses, witnesses who were threatened with criminal charges to change their testimony, fabricated documents, and illegaly obtained medical records without a warrant of the passenger of a vehicle in an accident. In conclusion, there is a complete absence of any physical evidnece of intoxication assault by Mr, Desilets in this case.

Due to the seriousness and the overall importance of these issues, along with the violations of Desilets's constitutional rights , Applicant requests that the Court of Appeals Grant him relief of his unconstitutional confinement and relief on his habeas corpus as he so prays.

## FINALLY:

We are all aware of the immense power and influence a State prosecutor wields when he or she brings a case against an accused. Usally, this power is tempered by safe guards that prohibit the State from violating an accused's constitutional rights. The goal is to attain a fair trial where the accused will be presumed innocent in the eyes of the jury untill proven guilty beyound a reasonable doubt by the State.

However, regrettable, in some instances a prosecutor abuses his or her power and in so doing, diverges from the goal of seeking the truth and justice. This case presents an example of such an instance; One where the prosecutor, in his zest to ensure a conviction, made constitutionally impermissible actions, references, withheld exculpatory and mitigating evidence, threatened defense witnesses to change testimony, and did substantially prejudice and influence the jury's verdict and that error convicted an innocent man.

## PRAYER

Wherefore, Premises Considered, Applicant Paul Ray Desilets, Respectfully Prays that the Court find there remain several controverted, previously unresolved facts material to the legality of the Applicant's confinement; that there is an overwhelming necessity for a fact-finding hearing, as Applicant has brought forth exculpatory and mitigating evidence which was withheld from the trial Court, and the record will reflect Applicant's claims for the Court to rule on relief sought; and recommend to the Honorable Court of Criminal Appeals that the Habeas Corpus relief by all things be Granted.

Respectfully Submitted



Paul Desilets

20.

CERTIFICATE OF COMPLIANCE WITH RULE 73.1

I hereby certify that this document complies with the requirements of Texas R. App.Proc. 73.1, because there are less than Fifth (50) pages in this document and that no M.S. computer program was used.

INMATE DECLARATION

I, Paul R. Desilets, being presently incarcerated in the Goree Unit of the Department of Criminal Justice, declare under penalty of purjury, Pursuant to 28 U.S.C. § 1746, that the facts in this Objection are true and correct.

CERTIFICATE OF SERVICE

I, Paul R. Desilets, being presently incarcerated in Walker County, Texas, and under penalty of purjury, Pursuant to 28 U.S.C. § 1746, do hereby affirm that I have delivered a copy of this Applicant's Objection to the prison mailroom officials for delivery to the following;

Executed on this the  24th day of August, 2015

Respectfully Submitted

Paul R. Desilets

Barbra Gladden Adamick
District Clerk, Montgomery County
301 N. Main Street
P.O. Box 2985
Conroe Texas 77305

Abel Acosta
Court of Criminal Appeals
P.O. Box 12308
Capitol Station
Austin Texas 78711

CAUSE NO. 08-12-11262-CR-I,II

PAUL R. DESILETS                    §        IN THE DISTRICT FOR

                                    §

V.                                  §        THE 359th JUDICIAL DISTRICT

                                    §

THE STATE OF TEXAS                  §        MONTGOMERY COUNTY, TEXAS


APPLICANT'S OBJECTION TO THE STATE'S
FINDINGS OF FACT AND CONCLUSION OF LAW


1. Applicant was charged with two counts of intoxication assault. he pled not guilty claiming he was the passenger of the vehicle. Due to the State's withholding of exculpatory and mitigating evidence and ineffective assistance of counsel, the jury found him guilty and his sentences ran concurrent. Brady v. Maryland, 83 S.Ct. 1194, 10 L.Ed.2d 215 91963).

2. On October 6, 2014, Applicant did file his application for habeas corpus putting forth seventeen grounds of constitutional violations with strong merit.

3. Attorney Choate responded with a Court ordered affidavit on 12/24/14, and Applicant filed his objection under 33.1 of the R.App.Proc. to counsels affidavit on 1/21/15, see appdx. "A" attached.

4. Applicant has no knowledge of Choate being appointed to him during his trial. see append. "A", pg.2, facts not apparent from the record, where counsel frauded his client, and rendered ineffective assistance of counsel. Perez v. Carrigan, 822 S.W.2d 261, 265 (Tex.App.-corpus christi 1991)

5. Choate was ineffective and did not have a defense in place during this trial. Strickland v. Washington, 466 U.S. 688 (1984).

6. Choate hired an investigator to interview eyewitnesses and add to his inefective assistance of counsel for doing so by shunning his responsibility. Butler v. State, 716 S.W.2d 48 (Tex.Crim.App.1986).


1.

7. Counsel Choate denied his client expert witnesses in his defense in several areas which would have assisted in his trial as well as a defense theroy. Johnson v. Texas, 959 S.W.2d (Tex.Crim.App.1997).

8. Prosecutor Fryer engaged in with holding exculpatory and mitigating evidence, threatened material witnesses with imprisonment or change there testimony on defenses behalf, tampered with documents, as well as prejudiced Applicant with verbal abuse and engaged in a physical altercation during the trial.

9. On May 21, 2009, the jury verdict was read into open Court with Applicant present, just as the judgement of conviction states. see append. of exhib."E".

10. On May 26, 2009 Applicant was not sentenced by Judge Ernst in any Court, and the stacking did not occur until June 1, 2009, in judges chambers, just as the judgement of conviction reflects. see append. of exhib. "L"

11. Applicant's appellate counsel was in fact working in and for the district attorney's office while he so called represented his client-but failed to include his client in his direct appeal. Strickland v. Washington, 466 U.S. 688 (1984); Powell v. Alabama,287 U.S. at 68-69, 53 S.Ct. at 63-64.

12. The fact remains Griffin did not include his client in any stage of the direct appeal and failed to address several constitutional violations in his clients trial, shows clearly that counsel took action against his client while laboring under a conflict of interest. Axel, 757 S.W.2d at 374.

13. Applicant has presented 16 grounds befour us, and the Court of Criminal Appeals has already found Griffin ineffective in assisting his client by citing in there opinion Ex Parte Wilson, 956 S.W.2d 25 (Tex.Crim.App.1997); see Desilets, 2012, WL 333809; appen. of exhib. "G".;Ex parte Jarett, 891, S.W.2d 935 (Tex.Crim.App.1994).

14. Judge Ernst abandoned the case on June 1, 2009 after the special setting in judges chambers in which he signed a cumulation order. Applicant was tried by two judges.

15. Prosecuting district attorney Fryer stated in open Court and on the record that he did in fact change and alter a goverment document (lab report) and then knowingly entered it into evidence before the Court. thus, engaging in criminal activity.

2.

16. Applicant has provided exculpatory and mitigating evidence which was withheld at trial and uncovered in an independent investigation proving that Applicant could not have been driving the vehicle at the time of the accident.

CONCLUSION OF LAW

1. Their remain several controverted, previously unresolved facts material to the legality of Applicant's confinement. Applicant has brought forth exculpatory and mitigating evidence which reveals Applicant is actually innocent of the crime in which he is incarcerated for. There is an overwhelming necessity for a evidentiary hearing.

2. The trial Court errored in cumulating Applicant's sentences and compounded the error by sentencing him twice in violation of the Fifth Amendment. U.S. v. Osborn, Ex Parte Padilla, 666 S.W.2d 111 (Tex.Crim.App. 1984); Ec Parte Barley, 842 S.W.2d 694 695 (Tex.Crim.App. 1992).

3. Counsel Griffin on appeal rendered ineffective assistance of counsel and shuned his obligation to consult or include his client in the direct appeal process, shows he worked under a conflict of interest against his own client and in fact rendered ineffective assistance of counsel. Ex Parte Flores, 387 S.W.3d 626, 639 (Tex.Crim.App. 2012).

4. Applicant has shown that Judge Ernst abandoned the case and prejudiced the defendant during the trial by allowing prosecution misconduct and illegal evidence into trial. U.S. v. Osborn, Ex parte Padilla, 666 S.W.2d 111, (Tex.Crim.App.1984);U.S. v. Green, 735 F.2d 1203(9th Cir.1984).

5. It is apparent on its face that counsel Griffin labored under a conflict of interest in the above case and altered the outcome of the direct appeal. Thus, by not including his own client in the direct appeal process, and keeping him in the dark. Strickland v. Washington, 466 U.S. 668 (1984); Powell v. Alabama, 287 U.S. at 68-69, 53 S.Ct. at 63-64.

3.

6. Applicant argues strongly that the State used a grand jury subpoena to further a police investigation and without the procurement of a warrant. Scherber, 384 U.S. at 770-771, 86 S.Ct. at 1835-36; Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970).

7. Applicant has provided documents, medical reports, accident reports, and emergency care reports which are listed on pg. 19 of this Objection, and proves that Applicant was the passenger of the vehicle at the time of the accident. see appendix of exhibits A, B, M., ; append. C and D attached.

8. Applicant has shown several grounds, as will the record reflect ineffective assistance of counsel prejudiced his trial by both of his counsel's. Both at different times, one at trial and one on direct appeal. Strickland v. Washington, 466 U.S. 688 (1984); Aldrich v. State, 104 S.W.3d 840 (Tex.Crim.App.2003); Ex Parte White, 160 S.W. 3d 46-49 (Tex.Crim.App.2004).

TEXAS CODE OF CRIMINAL PROCEDURE ANN. ARTICLE 11.07 §3 (d)
( vernon supp. 2001)

After the convicting Court makes a findings of fact or approves the findings of the person designated to make them, the clerk of the convicting Court must immediately transmit to the Court of Criminal Appeals, the application, answers filed, any motions filed, transcripts of all depositions and hearings, any affidavits, and any other motions such as official records used by the Court in resolving issues of fact.

Applicant makes claim that the trial court used the original trial transcripts to resolve and answer Applicant's habeas corpus application, and would request that a complete trial transcript recorded by both Court reporters be obtained and forwarded to the Honorable Court of Criminal Appeals. see appendix "F" attached.

Respectfully Submitted

Paul R. Desilets

4.

APPENDIX "A"


OBJECTION TO AFFIDAVIT OF JOUN CHOATE
INCLUDING THINGS NOT APPARENT FROM THE RECORD

Cause No 08-12-11262-CR, I, II

PAUL R. DESILETS  §  IN THE DISTRICT FOR

§

V.  §  THE 359th JUDICIAL DISTRICT

§

THE STATE OF TEXAS  §  MONTGOMERY COUNTY TEXAS


OBJECTION TO AFFIDAVIT OF JOHN E. CHOATE, JR.

TO THE HONORABLE JUDGE OF THE 359th JUDICIAL DISTRICT COURT, MONTGOMERY COUNTY:


**NOW COMES,** Paul R. Desilets, Applicant, in the above styled and numbered causes in a post-conviction Habeas Corpus, Pursuant to Article 11.07 of the Texas Code of Criminal Procedures, and files this his Objection To Affidavit Of John E. Choate, Jr., Pursuant to 33.1 of the Rules of Appellant Procedures.


In support of this Motion Applicant will show this Honorable Court the following;


## I.   HISTORY.

On October 6, 2014, Applicant filed his Application for Writ of Habeas Corpus under 11.07 of the Code of Criminal Procedure. On October 27, 2014, State filed an answer recomending dismissal of the application for failure to comply with 73.1 of the Rules of App. Proc. Applicant has not raised additional grounds and has amended his petition maintaining the same seventeen grounds to be in compliance with 73.1.

On November 20, 2014, State having considered Applicant's amended petition put forth the following issues to be resolved.

1.) Was the Applicant denied effective assistance of counsel at trial?

1.

On November 26, 2014, to resolve these fact issues the Court ordered Applicant's trial attorney John Choate, Jr., to provide an affidavit to specifically answer nine questions of concern. Applicant now files a response and objection and brings forth Facts Not Apparent From The Record as well as his Objection to the affidavit put forth by attorney John E. Choate, Jr..

## II. FACTS NOT APPARENT FROM THE RECORD

Mr. Desilets was denied bail and confined to the Montgomery County Jail before and during his trial. Attorney John Choate knowing his client was a collector of antiquities, art, jewelry, and fine collectables took advantage of his client Mr. Desilets knowing he would be under great duress and vulnerable.

Attorney Choate visited his client during trial and questioned him on what he had done with his property, and if he had followed his advice and retained a storage for safe keeping. Mr. Desilets confused by the conversation explained yes, that his buisness partner Wesley Holly and his strp-brother Mike Brown had obtained a storage unit, moved his property out of his home and into the unit for safe keeping. Choate then asked what storage facility did they choose? Desilets responded why the U-Haul off of 45, but why are you so concerned John? Don't you think we should be discussing my case?

Attorney Choate responded, I'm just concerened about your power-of-attorney and the protection of your property if we loose this trial. Mr. Desilets explained to his attorney that Manuel Calderone and Kim Howerton had verbal power untill we are able to fill out the legal documents depending on the outcome of the trial.

Attorney Choate at that time purposed that untill such time as Manuel and Kim assume power-of-attorney (if needed) that he would assume the responsibility and transfer it to them when the time came, if it came. Unsuspectingly, Desilets agreed and within two minutes Choate produced a document and a notary public right in the jail, and as soon as Desilets signed the document, and it was notarized, Choate concluded the unscheduled meeting and left, never discussing his client's case. The trial resumed and concluded with attorney Choate never mentioning his client's property again and consequently, Desilets an innocent man was sentenced to T.D.C.J. for his first offense ever.

2.

Mr. Desilets started his sentence and gave no more thought to the issue of power-of-attorney. However some time into his sentence Mr. Calderone asked Desilets about a documented power-of-attorney instead of a verbal one. This was due to the fact Mr. Wesley Holly who's storage unit it was was looking to transfer it over to Manuel and Kim. Mr. Desilets explained to Manuel that John Choate was to relay power-of-attorney to him and Kim after the trial. Mr. Calderon then told Desilets that John Choate came by the storage unit during the trial waving a power-of-attorney saying he had your consent to remove anything he wanted for payment of his services.

Mr. Desilets shocked and taken back by this information informed Calderon that this simply was not true, and asked what did Choate take from the storage? Mr. Caldron stated a 5ftx3ftx3ft safe, a baseball card collection, a stamp collection, three guitars, a hot wheels car collection, and he wasn't sure what else. Mr. Calderon asked, didn't you give John permission? Didn't John tell what he did and all he took? You didn't agree to this? Mr. Desilets replied No!! Of course not!! I had no knowledge of Choate's actions, and no I did not sign a power-of-attorney for John to steal from me or to take anything out of that storage, it wasn't even in my name.

Mr. Desilets explained to Calderon that Choate was to hold a power-of-attorney in case he was convicted and then transfer it to you and Kim, thats all. It was at that time Desilets realized his trial counsel had frauded him out ot aprox. 80,000. dollars worth of personal property and collectables. Further, prison mailroom records will show that Desilets tried several times to contact Choate, however, to no avail. Also Mr. Calderon, Mrs. Howerton, and Mr. Holley also tried to discuss the matter with Choate but their calls were not returned.

It is clear from the above facts attorney John Choate, Jr., motivation for ineffective assistance of counsel was that he frauded his client out of thouslands of dollars, baiscly stole from him and then proceeded to assist the prosecution in convicting an innocent man of a crime he didn't commit.

Mr. Desilets would like all involved to realize that a fiduciary duty is one of integrity, loyalty, and the utmost good faith, and that the attorney-client relationship is a contractual relationship, whereby the attorney agrees to render professional services for his client. Perez V. Kirk & Carrigan, 822 S.W.2d 261, 265 (Tex.App.-Corpus Christi 1991).

3.

Furthermore, the existance of an attorney-client relationship gives rise to effective assistance duties on the attorney's part to use the utmost good faith in dealings with the client, to maintain the confidences of the client, and to use reasonable care in rendering professional services to the client. Tex. Discip. Rule Prof. Conduct 1.01-8.05 (1999) reprinted in Tex. Gov't. Code Ann. Tit. 2 Subtit. G. app. (vernon supp. 1994)(State Bar Rule Art. x § 9). also see rule 1.08 Conflict of Interest; Prohibited transactions

(a) A lawyer shall not enter into a buisness transaction with a client unless;

(1) The transaction and terms on which the lawyer acquires the interest are fair and reasonable to the client and are fully disclosed in a manner which can be reasonably understood by the client.

In closing attorney John Choate, Jr., actions in his fraudulent activities against his client were deliberate due to the fact he sat next to his client in a courtroom and concealed what his intentions were and what had transpired.

As shown above there are several issues and unresolved facts to the ineffectiveness of trial counsel John Choate, Jr. which led to his clients confinement.


APPLICANT'S RESPONSE AND OBJECTION TO QUESTION 1&3
OF AFFIDAVIT PROVIDED BY TRIAL COUNSEL JOHN CHOATE, JR.


In his first response attorney Choate gives a canned response and faults his client, an A typical in denial response. First Applicant never discussed any alochol consumption with Choate and never had any loss of memory. Mr. Desilets did spend a great deal of time in the hospital being reconstructed and learning how to walk again, but no head injury for any loss of memory. Applicant, however, could not provide a great deal of information concerning Megan Mason, a.k.a. Charolet Megan Somerville due to the fact the relationship was sporatic at best. Counsel Choate did inform me that he had the assistance of James Townsend an investigator who had located Megan's address in Houston and was attempting to serve her a subpoena to appear in Court for trial.

Further, Mr. Choate's response states " the main defense was that he was not the driver". However, even with an investigator and the information before him Choate did not mount a strong defense, compounded with the decision not to obtain a expert witness to assist with the trial, basicly left Choate unprepared for trial.


4.

If counsel would have had a sound legal theory aided by an expert witness to cross-examine witnesses and do a factual evaluation of the accident. The following facts would have been presented to a jury during the trial;

1. Factual evidence from the police report shows damage to the right side of the vehicle, which is consistant with Desilets's injuries he sustained as the passenger of the vehicle

2. Factual evidence from the police report of the right (passenger) side of the vehicle are consistant with the medical records of injuries incurred by Desilets as a passenger in the accident, And makes it obvious he could not have been the driver.

3. Factual evidence from the police report at the scene of the accident shows the drivers side air bag was deployed during the accident; however, Desilets medical report from the accident and hospital clearly shows that he had no injuries to his face or head consistant with deployment of an air bag. Desilets had no facial injuries bruising, discoloration, or trauma from an explosion of an air bag, which shows that he could not have been the driver of the vehicle in the accident.

4. Factual evidence from the police report shows severe damage to the right side of vehicle Desilets was a passenger in, which would explain why Desilets exited from the drivers side (as told by witnesses) it was the only exit.

5. Factual evidence from the medical report of the extensive injuries sustained by Desilets in the accident of his right hip, knee, ankle, wrist, and ribs, which were all broke, consistant to being a passenger in a accident, and would explain why Desilets fell upon exiting the vehicle (as told by witnesses) due to his injuries.

In conjunction with the above facts the vehicle was impounded by police, however, counsel failed to obtain any evidence from the vehicle or even obtain the police inventory report of the vehicle. This would have revealed Desilets's brief case, along with Somerville's purse, extra womens shoes, thousands of dollars of christmas gifts, that were all confiscated by police and withheld as exculpatory evidence by the State during trial. see appendix of exhibits provided with habeas filed on oct. 6, 2014, exhib. A, auto report and exhib. B, medical report.

Applicant's trial counsel had none of the official police of medical reports stated above at trial. In fact all information and documentation contained in Desilets Habeas came to light when Desilets's family obtained them in their own investigation. If counsel had obtained them and an expert witness it would have made a significant difference in regards to the outcome of his trial.

5.

Question two simply asks; Did the evidence raise the defense that the Applicant was not the driver of the vehicle? And Applicant agrees with Choate's response of "yes". However, all of the documents and evidence contained in Desilets habeas proceeding and appendix of exhibits, were obtained by his family due to their own investigation. All of the relevant facts and documents we have today were withheld from Desilets's trial, which include but are not limited to;

1. Exhibit A, auto report, site of impact, showing damage to right side, and restraints, air bag deployment, and no injury to head, neck, of face.

2. Exhibit B, preliminary radilogy report showing injuries to the (passenger) right side of Desilets's body, and no injuries from the deployment of drivers side air bag, dated 12/17/2007.

It is clear defense counsel Choate failure to fully investigate the basis of his clients mitigating defense concerning the auto accident which he was a passenger in amounted to ineffective assistance of counsel. Williams V. Taylor, 529 U.S. 362, 120 S.Ct. 1495 (2000).

Applicant's trial counsel did not have any strategy or reasonable basis for not fully investigating these avenues of defense, for investigation into these avenues would have made a significant difference in regards to the outcome of his case. Here the deficiency asserted against Choate is in his failure to obtain an expert, conduct a proper investigation, and to bring the information forward at trial, which assuredly would have resulted in the dismissal of the intoxication assault charges against Desilets.

As a consequence of counsel's actions, Applicant was deprived of his Constitutional Right to Effective Assistance of Counsel and Due process of Law.

6.

## APPLICANT'S RESPONSE AND OBJECTION TO QUESTION 4
## OF AFFIDAVIT PROVIDED BY TRIAL COUNSEL JOHN CHOATE, JR.

It is clear from counsel Choate's response to question four that he misunderstood the question completely. The question was " did you challenge the reliability of the Applicant's blood test results?" Not did you object to it. Obviously, Choate side stepped the question by stating; " This was a suppression issue only", " an expert would not have helped and may have hurt", then Choate refered back to question three where Choate stated; " I felt the way it was collected could put doubt in the minds of the jury and our expert would have damaged that position".

Consequently, Choate never discussed the collection process with the jury other than cross examination of Dr. Troung, the prosecutions witness. Choate never mentioned, brought forth, or procure, "our" expert or any expert during trial to challenge the collection methods, testing, chain of custody, or person who was responsible for the overall procedure of the blood test.

Further, Choate states that this was a suppression issue only, again refering to response three, but this statement contradicts his affidavit response in question one, which he states; " Our defense also included attacking the blood results, including the methods used in collection and testing.

If Choate had mounted a strong defense for his client and had enlisted the assistance of an expert in the field of blood analysis it positively would have helped and not have hindered Desilets's trial. Several facts of the testing process were omitted from trial which should have been brought to the jury's attention.

Such as but not limited to;

1. The fact that every individual has a different serum or whole blood ratio and the use of an arbitrary or average conversion ratio does not give accurate results for a particular individual.

2. If an incorrect color cap was used on a vial, or if the anticoagulant or preservative was omitted, this would offer "reasonable doubt" about the integrity of the blood results, particularly if gaps exist in the chain of custody.

3. Compounded with the fact that Desilets had an I.V., and therefore the sample is contaminated with the intravenous fluids.

7

4. The fact that all blood collection vials have an expiration date. Manufactures claim that this is only relevant to the warranty of the vacume within the vial. Juror's may have seen the issue differently, if an expert analogizes it to milk and bread sold after the expiration date.

5. The fact that Desilets was wiped with an alcohol antiseptic before the blood draw and that there is a strong possibility there may have been contamination of the blood. For antiseptic used to clean the area containing alcohol produce measureable amounts of alcohol on a gas chromatograph.

6. In a emergency room settings, it is routine to use alcohol-based antiseptic to clean skin. It is also routine to use vacutainers and vials that are not in compliance with state regulations and statutes. This due to the fact that there was no warrent and it was a medical procedure for medical purposes only.

7. An expert witness then would have informed the jury that a percent of alcohol that was found in the blood sample was added to the test results because the person who withdrew the blood improperly used alcohol on the skin.

An effective attorney thus would have argued to the jury that a mere fraction of a drop of extraneous alcohol that had been applied to the skin had been responsible for the miscarriage of justice. An expert in this instant would have concluded his testimony with several more issues concerning Desilets's blood serum test, such as:

A. Distinguishing plasma, serum blood, and whole blood.

B. In vivo and invitro variation in blood testing.

C. Medication and disease.

D. Further contamination of blood specimens.

E. No chain of custody in blood testing.

All of the above would have educated the jury in the science of blood testing. However, Choate insistantly states that "Our defenses also included attacking the blood results" and "an expert would not have helped and may have hurt." This response by Choate only reveals the ineffectiveness of Choate's counsel in this trial towards Desilets.

Further, Desilets's family conducted their own investigation after his conviction and brought to light exculpatory evidence withheld from trial in the form of a disclaimer attached to a toxiclogy used to convict Desilets. It was explained by medical personel that Desilets was treated for medical purposes only and that was why his toxicology report of drugs and alcohol dated 12/7/2001 came with a disclaimer stating; "Drugs reported as positive have not been confirmed by a second method and should not be used for non-medical purposes."

8.

This disclaimer was noted on page #7 of the toxicology report which was withheld as exculpatory evidence by Rob Fryer lead prosecutor at trial. Thus resultin in a"brady"violation which rises to the level of affecting the outcome of the trial. In clear contradiction of Choate's affidavit response in question nine. see appendix of exhibits provided with this habeas proceeding, exhibit M, titled; forensic report Memotial Herman Hospital toxicology report, pg#7, dated 12/7/2007.

In closing, under Texas law, the proponet of scientific evidence must show by clear and convincing proof and outside the presence of the Jury, that the proffered evidence is sufficiently relevent and reliable to assist the Jury in accurately understanding other evidence or in determining a fact issue. Tex. Rules of Evid., Rule 702.

Therefore, reliability of "soft science evidence" may be established under Texas law by showing that:

1. The feild of expertise involved is a legitimate one;

2. The subject matter of the experts testimony is within the scope of that fiel

3. The experts testimony properly relies upon or utilizes the principals involved in that field. Tex. Rules of Evid., Rule 702.

Applicant point out that none of the simple rules of evidence were applied in his case and that attorney John Choate,Jr. never mounted a solid defense with a strong legal theory against the charges before his client Mr. Desilets, Therefore rendering him ineffective assistance of counsel against the only physical evidence against him.


APPLICANT'S RESPONSE AND OBJECTION TO QUESTION 5 & 6
OF AFFIDAVIT PROVIDED BY TRIAL COUNSEL JOHN CHOATE, JR.


Again,John Chaote's ineffectiveness and failure to investigate consecutive sentencing for his client Desilets, along with the constraints and statutes of the C.O.C.P. § 42.08, combined with the failure to challenge the Court's decision to cumulate his sentences violated Desilets's constitutional rights.

As put forth by the Supreme Court who reviewed and reaffirmed the principal that a cumulation order may not be entered once the defendant has began to serve his sentence becouse such would violate the constitutional protection against twice punished for the same offense. Ex Parte Barley, 842 S.W.2d 694,695(Tex.Crim.App.1992)

9.

Mr. Desilets contends that trial counsel Choate, failed to answer question six honestly, misleading the Court, for the record will reflect counsel at no time informed Desilets to the fact there was a cumulation order being considered. Mr. Desilets refers to the Court record to the dates May 22nd & 23rd, while Choate was in hearing's before the Court, his client was not present and had no knowledge of any legal proceedings to cumulate his sentences.

Montgomery County records will show Desilets was not at, allowed at, or transfered to Court on any of the above dates to the hearing's. Also that Choate never visited the jail to inform Desilets of such considerations or proceedings. Applicant contends he was only aware of the stacking considerations when he was returned to Court on June 1st, 12 days after he was sentenced in open Court and had started his sentence. As the date sentenced imposed reads on the judgement of conviction by jury provides. see appendix of exhibits provided with habeas filed on Oct. 6, 2014, exhibit D, order of the Court, exhibit E, judgement of conviction by Jury, and exhibit H, Charge to the Jury on punishment with out a stacking order.

Mr. Desilets Due Process clause of the Fourteenth Amendment was denied him due to ineffective assistance of counsel John Choate, for once a defendant is removed from the Court room and begins serving his sentence, it is to late to cumulate the sentenced imposed with an earlier one. Gray V. State, 291, S.W.3d 555, 558 (Tex.App.-Houston[14 Dist.] 2009, no pet.).

As explained above, counsel Choate's failure to investigate the applicable and basic of law and it's effects in this case, could not have been a strategic decision. Whether counsel's omissions were due to inexperience or mere inadvertence, this failure to investigate, fell below the deffective standards of reasonable conduct contemplated by Strickland. see Strickland V. Washington, 466, U.S. at 691 104 S.Ct. 2052.


APPLICANT'S RESPONSE AND OBJECTION TO QUESTION 7
OF AFFIDAVIT PROVIDED BY TRIAL COUNSEL JOHN CHOATE, JR.

In question seven Choate's reasoning of why his ineffectiveness was justified as to not interviewing any witnesses, or investigating the possibility of eliciting testimony from expert witnesses at trial is plainly an ill response.

10.

Attorney Choate claims he in fact hired an investigator to interview witnesses. However, Mr. Townsend did not testify at trial to the statements of witnesses or was he the elicitor of testimony of any witnesses at trial. Further, Mr. Townsend nor Choate objected to, or emphasized on the fact that Ms. King was threatened by lead prosecutor Rob Fryer with incarceration if she did not change her testimony. This in fact prejudiced and prevented Desilets from presenting exculpatory evidence in the form of testimony in support of his actual innocence.

Which attorney Choate states in response nine prosecutor Fryer would never do stating; " As far as I know he (Rob Fryer) has always disclosed Brady material and not taking any unethical action that rises to the level of affecting the outcome of a trial."

An effective attorney knows how to professionally interview witnesses so he may decied how to proceed in legal theory, and in hopes they will in fact state facts that can be used at trial during cross-examination. This is in accordance with the State Bar Rules of Prof. Condt. Rule 3.08(a)(3).

(a) A lawter shall not accept or continue employment as an advocate before a tribunnal.... if a lawyer knows or believes that the lawyer is or maybe a witness necessar to establish an essential fact on behalf of the lawyers client, unless;

(3) The testimony relates to the nature and value of legal services rendered in the case; Comment (6)-sub-paragraph (a)(3), states; Recognizes that where the testimony concerns the extent and value of legal services rendered in the action in which testimony is offered, permitting the lawyer to testify avoids the need for a second trial with new counsel to resolve the issue. Moreover, in such a situation the Judge has firsthand knowledge of the matter of the issue; hence, there is less dependence on the adversay process to test the credibility of the testimony.

In conclusion, Desilets contends in light of a realtively weak case there is reasonable probability that but for trial counsel's failure to object, interview, call eyewitnesses, obtain an expert, all on Desilets's behalf, the results of the proceeding would have been different.

Counsel Choate's failure to also obtain an expert on eyewitnesses unreliability indentification to dispute the other eyewitnesses accounts, prejudiced Desilets from presenting testimony that would have called into question the only direct evidence against him, eyewitness identification. U.S.C.A. Const. Amend. VI.

11.

## APPLICANT'S RESPONSE AND OBJECTION TO QUESTION 8
## OF AFFIDAVIT PROVIDED BY TRIAL COUNSEL JOHN CHOATE, JR.

Mr. Desilets complains that Ms Kings testimony would have provided exculpatory evidence of his actual innocence, but that King changed her testimony after she was wrongly threatened with criminal prosecution. Mr. Desilets insists that he was mistakenly identified as the driver of the vehicle, and aknowledging that the State's case against him was based on coached testimony of the witnesses who identified him at trial.

An expert would have presented expert testimony about the questionable reliability of eyewitness identification. Mr. Desilets further complains that his  pre-trial identification was not reliable because it was obtained with procedures that were impermissibly suggestive by the State. Desilets also points out that Choate failed to raise a valid objection after King testified she was threatened with criminal prosecution if she testified on Desilets's behalf,to the truth that Desilets was not the driver of the car and that the driver fled the scene.

Consequently, Choate failed to raise two valid objections that would have allowed King to testify without fear of further criminal prosecution. Thus, Desilets was unable to present evidence at trial of his actual innocence due to the fact his counsel failed to raise the proper objection,therefore, Desilets was prejudiced by his own counsel.

As a consequence of counsels action, Desilets was deprived of his constitutional right to effective assistance of counsel and due process of law.


## APPLICANT'S RESPONSE AND OBJECTION TO QUESTION 9
## OF AFFIDAVIT PROVIDED BY TRIAL COUNSEL JOHN CHOATE, JR.

To establish the requisite probability that Desilets is acutal innocent  and in order to fit within the fundamental-miscarriage-of-justice exception to the procedural default rule, Desilets must support his allegations with new, reliable, evidence that was withheld as exculpatory evidence by prosecution and was not presented at trial.

Applicant also must show that it was more likely than not that by the actions of lead prosecutor Rob Fryer no reasonable Juror would have convicted him in the light of that new evidence. Desilets has in fact provided that exculpatory evidence in this habeas proceeding wich was withheld at trial.

In John Choate's opinion and response no prosecutorial misconduct occured during trial that would warrent a reversal. However, the record will reflect that lead prosecutor Rob Fryer in fact engaged in the following;

1. Engaged in a verbal and physical (fist fight) confrontation in the Court during trial with Appelant's counsel John Choate, Jr..

2. Threatened a witness for the defense with criminal prosecution and incarceration if she did not change her testimony to what she actually saw.

3. Violated Tex. Penal Code § 37.07(a)(2), tampering with or fabricating physical evidence.

4. Violated Tex. Penal Code § 37.10(2)(a), tampering with a goverment record.

5. Violated Tex. Exclusinary Rule Art. 38.23 of the Code of Criminal Procd.

6. Court records will show Rob Fryer admitted in Court that he changed the results of the blood serum test before admitting it into evidence.

In this trial the State's lead prosecutor Rob Fryer abused and misused his power thus resulting in illegal activities and a complete abondoment of Desilets's constitutional guarantees. The State stepped outside the scope of their authority in abusing the power entrusted to them, therefore, exhibiting prosecutorial misconduct that warrants a complete reversal of Desilets's charges on the grounds of actual innocence.


## CONCLUSION AND PRAYER

Applicant requests after having considered the Affidavit put forth by counsel John Choate, Jr. responses to the nine questions presented to him by the Court. The Court also consider Applicant's objections to said responses put forward in said affidavit.

Wherefore, Premises Considered, Applicant Paul R. Desilets, respectfully Prays that this Honorable Court consider his objections to John Choate, Jr.'s affidavit for ineffective assistance of counsel and Grant his application for Writ of habeas Corpus and release him from his unconstitutional confinement.



Respectfully Submitted

Paul R. Desilets

13.

## INMATE DECLARATION

I Paul R. Desilets, being presently incarcerated in the Goree Unit of the Texas Department of Criminal Justice, declare under penalty of purjury, pursuant to 28 U.S.C. § 1746, that the facts in this Objection are true and correct.

Executed on this the 15th day of January, 2015

Respectfully Submitted

Paul R. Desilets

## CERTIFICATE OF SERVICE

I, Paul R. Desilets, being presently incarcerated in Walker County, Texas and under penalty of purjury pursuant to 28 U.S.C. § 1746, do hereby affirm that I have delivered a copy of this Objection to the prison mailroom officials for delivery to the following;

Executed on this the 15th day of January, 2015

Respectfully Submitted

Paul R. Desilets

Barbra Gladden Adamick
District Clerk, Montgomery County
301 N. Main St.
P.O. Box 2985
Conroe Texas 77305

Louise Pearson, Clerk
Court of Criminal Appeals
Capitol Station
Austin Texas 78711

14.

APPENDIX "B"


COURT OF APPEALS NINTH DISTRICT OF TEXAS AT BEAUMONT
DESILETS V. STATE NO. 09-12-00526-CR, 2013 WL 395895 (Tex.App.-Beaumont
Jan. 30, 2013, no pet.)


1. " THE ISSUE MIGHT ARISE IN SUBSUQUENT HABEAS PROCEEDINGS."

In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

FILED

JAN 3 0 2013

CAROL ANNE HARLEY
CLERK OF THE COURT
NINTH COURT OF APPEALS

_____

NO. 09-12-00526-CR
_____

PAUL RAY DESILETS, Appellant

V.

THE STATE OF TEXAS, Appellee

_____

On Appeal from the 359th District Court
Montgomery County, Texas
Trial Cause No. 08-12-11262 CR
_____

MEMORANDUM OPINION

This Court affirmed the trial court's judgments in an appeal by Paul Ray Desilets of convictions for intoxication assault. *See Desilets v. State*, No. 09-09-00375-CR, 2010 WL 3910588 (Tex. App.—Beaumont Oct. 6, 2010, pet. ref'd); *see also* Tex. Penal Code Ann. § 49.07 (West 2011). Later the trial court denied Desilets's motion for entry of judgment nunc pro tunc, and Desilets filed a notice of appeal.

"The standard to determine whether an appellate court has jurisdiction to hear and determine a case 'is not whether the appeal is precluded by law, but whether the appeal is authorized by law.'" *Blanton v. State*, 369 S.W.3d 894, 902 (Tex. Crim. App. 2012)

1

(quoting *Abbott v. State*, 271 S.W.3d 694, 697 (Tex. Crim. App. 2008)). A nunc pro tunc judgment may be appealed. *Id.* at 904. Errors that are not the result of judicial reasoning are sometimes considered clerical errors that can be fixed by a nunc pro tunc order. *See Collins v. State*, 240 S.W.3d 925, 928 (Tex. Crim. App. 2007). In this case, the trial court denied Desilets's motion to delete the cumulation order from the judgment. "The trial court cannot, through a judgment nunc pro tunc, change a court's records to reflect what it believes should have been done." *Id.* The signing of an order denying a motion for entry of judgment nunc pro tunc is not an appealable event. *Everett v. State*, 82 S.W.3d 735, 735 (Tex. App.—Waco 2002, pet. dism'd).

In response to our inquiry regarding jurisdiction, Desilets requested mandamus relief. He contends the trial court had a ministerial duty to correct the judgment by deleting the cumulation order. *See Ex parte Madding*, 70 S.W.3d 131, 135-36 (Tex. Crim. App. 2002) (A trial court's oral pronouncement that sentences be served concurrently controls over the written judgment's cumulation order.). The parties' submissions to the trial court on Desilets's motion for judgment nunc pro tunc reflect the dispute. Desilets claimed that the trial court orally pronounced sentence without stating that the sentences for intoxication assault would be served consecutively. The State claimed that a visiting judge conducted the trial and received the jury's verdict, that the judge of the 359th District Court reconvened the proceedings the following day and the parties agreed to recess until the visiting judge could return to decide the issue of cumulation, and that the

2

visiting judge pronounced sentence and ordered that Desilet's sentences for intoxication assault be served consecutively. *See* Tex. Penal Code Ann. § 3.03(b)(1)(A) (West Supp. 2012).

Desilets failed to challenge the trial court's decision to cumulate the sentences in his original appeal. An order denying a motion for judgment nunc pro tunc is not appealable. Under the circumstances it would not be proper for this Court to grant a writ of mandamus or exercise jurisdiction over this appeal.[1] We dismiss this appeal for lack of jurisdiction.

APPEAL DISMISSED.

DAVID GAULTNEY
Justice

Opinion Delivered January 30, 2013
Do Not Publish

Before Gaultney, Kreger, and Horton, JJ.

---

[1] To resolve the jurisdictional and procedural issues before us, we need not determine whether the trial court correctly ordered cumulation, and the issue might arise in subsequent habeas proceedings. Accordingly, we do not address the merits of the issues attempted to be raised in this appeal.

APPENDIX "C"


FORENSIC REPORT MEMORIAL HERMAN HOSPITAL TOXIOLOGY-DRUGS OF 12/17/07
DISCLAIMER ON REPORT : DRUGS REPORTED AS POSITIVE HAVE NOT BEEN CONFIRMED
BY A SECOND METHOD AND SHOULD NOT BE USED FOR NON-MEDICAL PURPOSES PG. 7



MEMORIAL HERMAN HOSPITAL
THE WOODLANDS
9520 PINECROFT
THE WOODLANDS, TX 77380
S/N 1569

===========================================================================

## ** STAT **

===========================================================================

| | |
|---|---|
| Name: DESILETS, PAUL | Sample ID: PAUL |
| Patient ID: 47059150 | Sample Type: Serum |
| Date of Birth: 07/25/1959 | Doctor: TRUONG |
| Age: 48 | Collection Date/Time: 12/17/2007  00:38 |
| Sex: M | Run Date/Time: 12/17/2007  01:10 |
| Location: ER | Rack/Pos/Rep: 83/2/1 |
| Pat. Comment: | |
| Sample Comment: | |
| Dilution: | |

===========================================================================

| Chemistry | Results | Units | Reference Range | Remarks |
|---|---|---|---|---|
| ETOH | 246.5 | mg/dL | 5.0 - 100.0 | HIGH |

Instrument Codes
------------------------



47059150-7351 W  A:12/17/07
DESILETS, PAUL                    M
DOB:07/25/1954   53Y SER:EMR

470591507351

DESILETS, PAUL                     WER2  17
DR. TRUONG, KEVIN ANH                    WER2
07/25/1959    48 YRS   MALE
(0013)0000-47059150    EMERGENCY PAT


MHHS- THE WOODLANDS
9250 PINECROFT
WOODLANDS                    TX 77380

# C H E M I S T R Y


Collection Date:     12/17/07
        Weekday:     MON
Collection Time:     0036

                                                  Units    Ref. Range

---- BASIC METABOLIC PANEL COMPONENTS
   SODIUM @             138
   POTASSIUM @          4.1                        mEq/L    [135-145]
   CHLORIDE @           98                         mEq/L    [3.5-5.1]
   CO2 @                27                         mEq/L    [95-109]
   BUN @                20                         mEq/L    [24-32]
   CREATININE @         1.3                        mg/dL    [7-22]
   GLUCOSE @            207  H                     mg/dL    [0.5-1.4]
   ANION GAP @          17                         mg/dL    [65-110]
   CALCIUM @            9.2                        mEq/L
                                                   mg/dL    [8.5-10.5]

---- GENERAL CHEMISTRY
   AMYLASE @            131  H                     U/L      [25-125]
   LIPASE @             62   H                     U/L      [22-51]

---- LIVER FUNCTION
   TOTAL PROTEIN @      6.4                        g/dL     [6.4-8.4]
   ALBUMIN SERUM @      3.7                        g/dL     [3.5-5.0]
   BILI TOTAL @         0.6                        mg/dL    [0.2-1.3]
   ALK PHOS @           49                         U/L      [39-117]
   AST (SGOT) @         632  H                     U/L      [0-37]
   ALT (SGPT) @         714  H                     U/L      [0-40]

Legend:
H = High
@ = SODIUM, POTASSIUM, CHLORIDE, CO2, BUN, CREATININE, GLUCOSE, ANION GAP, CALCIUM, TOTAL PROTEIN
    , ALBUMIN SERUM, BILI TOTAL, ALK PHOS, AST (SGOT), ALT (SGPT) Performed at  MHWL
@ = AMYLASE, LIPASE Performed at  MHWL


PRINT DATE:   12/18/07   0208
PAGE   1

CONTINUE...

470591507551                          12    /07
DESILETS, PAUL                 WER2   17
DR. TRUONG, KEVIN ANH                  WER2
07/25/1959    48 YRS  MALE
(0013)0000-47059150  EMERGENCY PAT

MHHS- THE WOODLANDS
9250 PINECROFT
WOODLANDS                 TX 77380

        C A R D I A C      A S S E S S M E N T


   Collection Date:     12/17/07
          Weekday:      MON
   Collection Time:     0036
                                                        Units    Ref. Range

---- MYOCARDIAL INJURY
   TROPONIN-T @        <0.010                           ng/mL    [0.000-0.100]
   CK @                 356 H                            U/L         [12-191]
   CK-MB @              8.2 Cf                           ng/mL     [0.0-7.0]
 12/17/07 0036  CK-MB         CALLED TO DWAYNE 12/17/07 03:09 SAM. RESULT BACK OK


Legend:
H = High, C = Critical, f = Footnote
@ = CK Performed at  MHWL
@ = TROPONIN-T, CK-MB Performed at  MHWL


PRINT DATE:   12/18/07   0208
PAGE   2

CONTINUE...


                          MEMORIAL HERMANN HOSPITAL SYSTEM
                               Laboratory Services
                                DISCHARGE REPORT

47059150735l                    12   /07
DESILETS, PAUL                  WER2  17
DR. TRUONG, KEVIN ANH                 WER2
07/25/1959   48 YRS   MALE
(0013)0000-47059150   EMERGENCY PAT

MHHS- THE WOODLANDS
9250 PINECROFT
WOODLANDS              TX 77380


### HEMATOLOGY

Collection Date:     12/17/07
        Weekday:     MON
Collection Time:     0036

|  |  |  | Units | Ref. Range |
|---|---|---|---|---|
| **HEMOGRAM** | | | | |
| WBC @ | 13.4 | H | K/CMM | [4.8-10.8] |
| RBC @ | 4.89 | | M/CMM | [4.70-6.10] |
| HEMOGLOBIN @ | 15.3 | | G/DL | [14.0-18.0] |
| HEMATOCRIT @ | 44.9 | | % | [42.0-54.0] |
| MCV @ | 91.8 | | FL | [80.0-94.0] |
| MCH @ | 31.3 | H | PG | [27.0-31.0] |
| MCHC @ | 34.1 | | G/DL | [32.0-36.0] |
| RDW @ | 14.1 | | % | [11.5-14.5] |
| PLATELET @ | 332 | | K/CMM | [133-450] |
| MEAN PLT VOL @ | 7.0 | L | FL | [7.4-10.4] |
| **DIFFERENTIAL** | | | | |
| SEGS @ | 44.6 | L | % | [45.0-75.0] |
| BANDS @ | 0.0 | | % | [<   11.0] |
| LYMPHOCYTES @ | 50.9 | H | % | [20.0-40.0] |
| ATYPICAL LYMPHS @ | .0 | | % | [<    .0] |
| MONOCYTES @ | 3.4 | | % | [2.0-12.0] |
| EOSINOPHILS @ | .9 | | % | [.0-4.0] |
| BASOPHILS @ | .2 | | % | [.0-1.0] |
| NEUT # @ | 6.0 | | K/CMM | [1.5-8.1] |
| LYMPH# @ | 6.8 | H | K/CMM | [1.0-5.5] |
| MONO# @ | .5 | | K/CMM | [.0-.8] |

Legend:
L = Low, H = High
@ = WBC, RBC, HEMOGLOBIN, HEMATOCRIT, MCV, MCH, MCHC, RDW, PLATELET, MEAN PLT VOL, SEGS, BANDS, LYMP
    , ATYPICAL LYMPHS, MONOCYTES, EOSINOPHILS, BASOPHILS, NEUT #, LYMPH#, MONO# Performed at  MHWL


PRINT DATE:   12/18/07   0208
PAGE   3

CONTINUE...

≞⸗⸗⸗⸗⸗⸗⸗⸗⸗           ⸗⸗   ⸗⸗⸗

DESILETS, PAUL            WER2   17
DR. TRUONG, KEVIN ANH              WER2
07/25/1959    48 YRS   MALE
(0013)0000-47059150   EMERGENCY PAT

MHHS- THE WOODLANDS
9250 PINECROFT
WOODLANDS               TX 77380


## H E M A T O L O G Y

Collection Date:     12/17/07
        Weekday:     MON
Collection Time:     0036

                                              Units    Ref. Range

DIFFERENTIAL
  EOS# @                    .1                 K/CMM     [.0-.5]
  BASO# @                   .0                 K/CMM     [.0-.2]

### U R I N A L Y S I S


  Collection Date:     12/17/07
          Weekday:     MON
  Collection Time:     0239

                                              Units    Ref. Range

---- MACROSCOPIC ANALYSIS
  CLARITY @            CLEAR                            [CLEAR]
  COLOR @             · YELLOW                          [YELLOW]

---- URINE CHEMICAL
  SPEC GRAVITY @       1.020                            [< 1.030]
  pH @                  5.5                             [4.5-8.0]
  GLUCOSE mg/dL @    NEGATIVE                           [NEGATIVE]
  BILIRUBIN @        NEGATIVE                           [NEGATIVE]
  KETONES mg/dL @      TRACE *                          [NEGATIVE]

Legend:
* = Abnormal
@ = EOS#, BASO# Performed at  MHWL
@ = CLARITY, COLOR, SPEC GRAVITY, pH, GLUCOSE mg/dL, BILIRUBIN, KETONES mg/dL Performed at  MHWL


PRINT DATE:   12/18/07    0208
PAGE    4

CONTINUE...

4705915O7551                     12   /07
DESILETS, PAUL             WER2   17
DR. TRUONG, KEVIN ANH              WER2
07/25/1959    48 YRS   MALE
(0013)0000-47059150   EMERGENCY PAT


MHHS- THE WOODLANDS
9250 PINECROFT
WOODLANDS              TX 77380

         U R I N A L Y S I S


    Collection Date:    12/17/07
           Weekday:     MON
    Collection Time:    0239                                    Units    Ref. Range


---- URINE CHEMICAL
   BLOOD @               LARGE *                                   [NEGATIVE]
   PROTEIN @              100 *                                    [NEGATIVE]
   NITRITE @          NEGATIVE                                     [NEGATIVE]
   LEUKOCYTE ESTER @ NEGATIVE                                      [NEGATIVE]
   UROBILIN mg/dL @       0.2                                      [0.1-1.0]
---- MICROSCOPIC ANALYSIS
   WBC/HPF @             0-2                                       [0-5]
   RBC/HPF @             0-2                                       [0-2]
   BACTERIA/HPF @       OCC'L *                                    [NON SEEN]
   AMORPHOUS/HPF @     SLIGHT *                                    [NON SEEN]
   MUCUS/LPF @         SLIGHT *                                    [NON SEEN]
   SQUAM EPITH/LPF @   OCC'L                                       [0-1]
   GRAN CAST/LPF @      6-10 *                                     [0-0]


Legend:
* = Abnormal
@ = BLOOD, PROTEIN, NITRITE, LEUKOCYTE ESTER, UROBILIN mg/dL, WBC/HPF, RBC/HPF, BACTERIA/HPF, AMORPH
   , MUCUS/LPF, SQUAM EPITH/LPF, GRAN CAST/LPF Performed at  MHWL


PRINT DATE:   12/18/07   0208
PAGE    5

CONTINUE...

DESILETS, PAUL               WER2   17
DR. TRUONG, KEVIN ANH                 WER2
07/25/1959    48 YRS   MALE
(0013)0000-47059150   EMERGENCY PAT


MHHS- THE WOODLANDS
9250 PINECROFT
WOODLANDS                    TX 77380




T O X I C O L O G Y - D R U G S   O F   A B U S E



     Collection Date:     12/17/07
            Weekday:      MON
     Collection Time:     0036
                                                              Units   Ref. Range


----SERUM
   ALCOHOL SERUM @          246 f                              mg/dL
ALCOHOL SERUM (05/25/04 -- Current)
               NEGATIVE RANGE: BELOW DETECTABLE LIMIT OF 5 mg/dL
               TOXIC RANGE: GREATER THAN 250 mg/dL
               FATAL LEVELS: 400-800 mg/dL


----URINE
   AMPHETAMINE @      NEGATIVE f                                    [NEGATIVE]
   BARBITURATE @      NEGATIVE f                                    [NEGATIVE]
   BENZODIAZEPINE @   NEGATIVE f                                    [NEGATIVE]
   CANNABINOIDS @     NEGATIVE f                                    [NEGATIVE]
   COCAINE @          NEGATIVE f                                    [NEGATIVE]
AMPHETAMINE (10/13/99 -- Current)
               NEGATIVE: LESS THAN 1000 NG/ML
BARBITURATE (10/13/99 -- Current)
               NEGATIVE: LESS THAN 200 NG/ML
BENZODIAZEPINE (10/13/99 -- Current)
               NEGATIVE: LESS THAN 200 NG/ML
CANNABINOIDS (05/16/01 -- Current)
               NEGATIVE: LESS THAN 50 NG/ML
COCAINE (10/13/99 -- Current)
               NEGATIVE: LESS THAN 300 NG/ML



Legend:
f = Footnote
@ = ALCOHOL SERUM, AMPHETAMINE, BARBITURATE, BENZODIAZEPINE, CANNABINOIDS, COCAINE Performed at   MHH


PRINT DATE:   12/18/07    0208
PAGE   6

CONTINUE...

‑7059150751                    1.    /07
DESILETS, PAUL                WER2   17
DR. TRUONG, KEVIN ANH                WER2
07/25/1959   48 YRS   MALE
(0013)0000-47059150   EMERGENCY PAT

MHHS- THE WOODLANDS
9250 PINECROFT
WOODLANDS                    TX 77380

## T O X I C O L O G Y - D R U G S   O F   A B U S E

Collection Date:        12/17/07
        Weekday:        MON
Collection Time:        0036

                                                    Units    Ref. Range

----URINE
  OPIATE @           NEGATIVE f                                         [NEGATIVE]
  PHENCYCLIDINE @    NEGATIVE f                                         [NEGATIVE]
OPIATE (10/13/99 -- Current)
             NEGATIVE: LESS THAN 300 NG/ML
PHENCYCLIDINE (02/15/05 -- Current)
             NEGATIVE: LESS THAN 25 NG/ML

        Drugs reported as positive have not been confirmed by a second method and
        should not be used for non-medical purposes. To order confirmation, contact
        Laboratory.

Legend:
f = Footnote
@ = OPIATE, PHENCYCLIDINE Performed at   MHWL

PRINT DATE:   12/18/07    0208
PAGE    7

END OF REPORT

                              MEMORIAL HERMANN HOSPITAL SYSTEM
                                    Laboratory Services
                                    DISCHARGE REPORT

APPENDIX "D"

MEMORIAL HERMAN HEALTHCARE RADIOLOGY REPORT

SHOWING INJURIES TO DESILET'S RIGHT SIDE (PASSENGER) SIDE
AS RESULT OF THE M.V.C. CONSISTANT TO THE DAMAGE TO THE VEHICLE

Patient Name :      DESILETS, PAUL
Admitting Physician :      Truong, Kevin Anh
Attending Physician :      Truong, Kevin Anh
DOB  /  Sex :      07/25/1959   /   M
Ordering Physician :      Truong, Kevin Anh
Med Rec Number :      47059150
Patient Type :      E
Print Date/Time :      12/17/2007  11:19:05
Financial # :      470591507351
Location :      TW      WER2      17


Exam :                                   Exam Date/Time :      Accn Number :
Chest/Abdomen/Pelvis w contrast CT       12/17/2007 03:21:27       07-351-000651

small pancreatic head contusion is likely present.


PELVIS:

Posterior dislocation of the right hip is noted with several small
osseous fragments present in the joint. The largest fragments measure
about 4 mm. The gastrointestinal tract is unremarkable. The appendix
is normal. No pelvic mass, ascites, or adenopathy is present. The
visualized axial and appendicular skeleton are unremarkable.


Impressions:

1. Fracture-dislocation of the right hip noted with small osseous
fragments and hip joint. Preliminary interpretation was provided at

Print Date/Time :      12/17/2007  11:19:05
Financial # :      470591507351
Patient Type :      E
Admit Date/Time :      12/17/2007  00:00:00
Discharge Date/Time :      12/17/2007  06:17:00

Page 5 of 6

DESILETS, PAUL /47059150/TW      WER2

MEMORIAL HERMANN HEALTHCARE SYSTEM

RADIOLOGY REPORT

Patient Name :      DESILETS, PAUL
Admitting Physician :      Truong, Kevin Anh
Attending Physician :      Truong, Kevin Anh
DOB / Sex :      07/25/1959   /   M
Ordering Physician :      Truong, Kevin Anh
Med Rec Number :      47059150
Patient Type :      E
Print Date/Time :      12/17/2007 11:19:05
Financial # :      470591507351
Location :      TW      WER2      17


Exam :                                          Exam Date/Time :    Accn Number :
Chest/Abdomen/Pelvis w contrast CT      12/17/2007 03:21:27       07-351-000651

INDICATION:

mva

RADIOLOGY REPORT:


Patient:DESILETS, PAUL

DOB:07/25/1959

MRN: 47059150

Ordering Physician: Truong, Kevin


Date:  Dec 17 2007  3:21AM

Comparison: None

Clinical Indications: Chest and abdominal trauma from MVC

History: right hip pain

Print Date/Time :      12/17/2007 11:19:05
Financial # :      470591507351
Patient Type :      E
Admit Date/Time :      12/17/2007 00:00:00
Discharge Date/Time :      12/17/2007 06:17:00

Page 1 of 6

DESILETS, PAUL /47059150/TW      WER2

MEMORIAL HERMANN HEALTHCARE SYSTEM

RADIOLOGY REPORT

Patient Name :       DESILETS, PAUL
Admitting Physician :       Truong, Kevin Anh
Attending Physician :       Truong, Kevin Anh
DOB  /  Sex :       07/25/1959    /    M
Ordering Physician :       Truong, Kevin Anh
Med Rec Number :       47059150
Patient Type :       E
Print Date/Time :       12/17/2007 10:26:15
Financial # :       470591507351
Location :       TW       WER2       17


Exam :                                          Exam Date/Time :      Accn Number :
Spine cervical wo contrast CT                   12/17/2007 03:21:42       07-351-000648


IMPRESSION:


 Nondisplaced fractures of the first and second medial right ribs at
the costovertebral articulation.


Additional fracture of the uncinate process of C7 at the joint of
Luschka.


Print Date/Time :       12/17/2007 10:26:15
Financial # :       470591507351
Patient Type :       E
Admit Date/Time :       12/17/2007 00:00:00
Discharge Date/Time :       12/17/2007 06:17:00

Page 3 of 4

DESILETS, PAUL /47059150/TW       WER2

MEMORIAL HERMANN HEALTHCARE SYSTEM

RADIOLOGY REPORT

Patient Name :      DESILETS, PAUL
Admitting Physician :      Truong, Kevin Anh
Attending Physician :      Truong, Kevin Anh
DOB  /  Sex :      07/25/1959     /   M
Ordering Physician :      Truong, Kevin Anh
Med Rec Number :      47059150
Patient Type :      E
Print Date/Time :      12/17/2007  10:26:15
Financial # :      470591507351
Location :      TW      WER2      17

Exam :                                    Exam Date/Time :    Accn Number :
Spine cervical wo contrast CT             12/17/2007 03:21:42      07-351-000648


FINDINGS: Exam demonstrates nondisplaced fractures of the first and second medial right ribs at the costovertebral articulation.These are visualized on coronal image 15 and image 17 and axial images 141 and 153.


An additional fracture involving the superior articulating process of C7 at the joint of Luschka is visualized on coronal image 14.


There is straightening of normal cervical alignment. Ossification of the anterior annulus at C4-C5 through C6-C7 is noted. Craniocervical and C1-C2 articulation are well maintained.


Print Date/Time :      12/17/2007  10:26:15
Financial # :      470591507351
Patient Type :      E
Admit Date/Time :      12/17/2007 00:00:00
Discharge Date/Time :      12/17/2007 06:17:00

Page 2 of 4

DESILETS, PAUL /47059150/TW      WER2

MEMORIAL HERMANN HEALTHCARE SYSTEM

RADIOLOGY REPORT

Patient Name :      DESILETS, PAUL
Admitting Physician :      Truong, Kevin Anh
Attending Physician :      Truong, Kevin Anh
DOB  /  Sex :     07/25/1954   /   M
Ordering Physician :      Truong, Kevin Anh
Med Rec Number :    47059150
Patient Type :      E
Print Date/Time :       12/17/2007 08:16:17
Financial # :      470591507351
Location :      TW       WER2       17


Exam :                                      Exam Date/Time :    Accn Number :
Hip  min 2 views                            12/17/2007 02:11:43      07-351-000601


Impressions:

1. Posterior superior dislocation of the right femur.

-

-


Read by:  Tran, Huy Quoc

Transcribed Date/time:  12/17/07 2:11 am      Dictated Date/time:  12/17/07 8:
13 am

Electronically Signed by:  Tran, Huy Quoc          , M.D.       12/17/07 8:13 am

FINAL REPORT


Print Date/Time :       12/17/2007 08:16:17
Financial # :      470591507351
Patient Type :      E
Admit Date/Time :      12/17/2007 00:00:00
Discharge Date/Time :

Page 3 of 3

DESILETS, PAUL /47059150/TW      WER2

APPENDIX "E"


AMENDED MEMORANDUM IN SUPPORT OF ORIGINAL

APPLICATION FOR WRIT OF HABEAS CORPUS

CAUSE NO. 08-12-11262-CR-II

NO.

| THE STATE OF TEXAS | § | IN THE 359TH JUDICIAL |
| | § | |
| Versus | § | DISTRICT COURT |
| | § | |
| PAUL R. DESILETS | § | OF MONTGOMERY COUNTY, TEXAS |

AMENDED MEMORANDUM IN SUPPORT OF ORIGINAL

APPLICATION FOR WRIT OF HABEAS CORPUS

CAUSE NO. 08-12-11262-CR-II

TO THE HONORABLE JUDGE OF THE 359TH DISTRICT COURT OF MONTGOMERY COUNTY, TEXAS

**NOW COMES**, Paul R. Desilets, Applicant, in this cause Pro Se, pursuant to Article 11.07 of the Texas Code of Criminal Procedure, and in compliance with Tex. Rules of App. Proc. 73.1 and raises seventeen grounds for Habeas Corpus Relief. Applicant respectfully requests the Court grant him a hearing and, after consideration of the issues and arguments presented therein, issue a Writ of Habeas Corpus and Grant Applicant relief from his unconstitutional confinement.

I.      INTRODUCTION

This is a post conviction application for a Writ of Habeas Corpus filed in pursuant to Article 11.07 of the Texas Code of Criminal Procedure. Mr. Desilets was convicted in a two count indictment with the offense of intoxication assault. On May 21, 2009, a jury assessed punishment at five years on Count No. I, and six years on Count No. II.

Judge Erwin Ernst orally pronounced the jury's verdict in open court, with both sentences running concurrent. On June 1, 2009, at a resentencing hearing titled "special setting," Mr. Desilets in Judge's chambers, was resentenced and the sentences were illegally stacked to run consecutive. Following this Mr. Desilets was again orally pronounced in open court by Judge Kathleen Hamilton, recused Judge from said trial, who resumed trial for resentencing.

The Court of Appeals for the 9th District of Texas, at Beaumont affirmed the lower Court's judgment on November 30, 2010.

1

On April 20, 2012, the Court of Criminal Appeals issued a Mandate Granting Applicant an out-of-time Petition for Discretionary Review (P.D.R.), Pursuant to Art. 11.07 (west supp.2010), No. PD-0583-12. On December 17, 2012, the P.D.R. was denied by the Court of Criminal Appeals. On March 9, 2013, Applicant filed a Writ of Certiorari in the Supreme Court of the United States and on September 13, 2013, it was placed on the docket at No. 13-6927, and in November of 2013, it was not of the 1% to be considered and was dismissed.

Mr. Desilets now returns to the 359th Judicial District Court of Montgomery County, to exhaust all of his required remedies in the Habeas proceedings. Mr. Desilets requests that the application be directed toward these convictions. Any delay in filing this application is due to changes in the Texas Code of Criminal Procedures Art. 11.07, Sec. 4. Section 4 now limits petitioner to "one bite" of the apple in which Applicant delayed filing to ensure all possible issues are raised in the initial Writ application.

The Texas Constitution Art. I §12 states "the Writ of Habeas Corpus is a writ of right and shall never be suspended." The Court of Criminal Appeals has also stated "if the legislature had wanted time requirements to apply, it would have included such requirements in its 1995 overhaul of Art. 11.07." see Ex Parte Carrio, 992 S.W. 2d 486, 490(Tex.Crim.App.1999).

Mr. Desilets has previously informed the state in writing that records would be required for future litigation. Applicant was informed that all records and key witnesses are available as to prevent prejudice to the State.

As set forth below, Mr. Desilets Rights under the United States and Texas Constitution were denied him at trial, and the denials provide grounds for relief in a Habeas Corpus. For these reasons, Mr. Desilets respectfully requests this Court Grant him an evidentiary hearing and Grant his application for Habeas Corpus Relief.


## II.    STATEMENT OF THE CASE


On December 16, 2007, at approx. 11:30 p.m., Applicant, Paul R. Desilets and Ms. Megan Somerville (Mason) were traveling back to Desilets residence after a full evening of Christmas shopping to drop off Desilets for the night. Somerville was driving and checking her text messages while Desilets was an occupant in the passenger's seat. Desilets did not see

anything prior to the accident for he was facing Somerville. When he regained consciousness Desilets realized that he was in a great deal of pain and that Megan was gone from the vehicle.

Mr. Desilets, seeing smoke, tried to exit from the passenger's side, however, the passenger side door would not open due to damage sustained in the accident. Desilets then slid over to the driver's side, realized the door was ajar, and pushed it open easily. Desilets tried to exit, but fell onto his back due to the serious injuries he had just received in the crash.

Mr. Desilets was transported to Memorial Hermann Woodlands where he met police and family shortly after his arrival. Desilets was transported to Hermann Hospital Houston due to the extensive injuries to his right side of his body, consistent with being a passenger in the vehicle.

Mr. Desilets was hospitalized for over 25 days while he underwent surgery to his right side, and had to learn how to walk all over again. In fact, Desilets has still not recovered fully, he faces future surgeries and therapy, and he also realizes that he will have to endure the pain and problems from his injuries for the rest of his life.

Mr. Desilets medical records reflect all of the injuries he sustained in the accident are on the right side of his body, which negate any notion that he was the driver of the vehicle in which he was actually a passenger. Furthermore, all the medical records reflect Desilets had no head trauma, no head or facial injuries, bruising, redness, marks, black eyes, or any head injuries whatsoever, which would be consistent with the deployment of an airbag on the driver's side of a vehicle during an accident such as this one. Official reports from the scene state that the airbag was deployed.

Mr. Desilets was not at any time placed under arrest or detained for a D.W.I. nor was a warrant issued for a blood test during his treatment in connection with the accident. This was due to the fact that police at the scene and the hospital all knew Desilets was not the driver of the vehicle, but was the passenger on the evening of 12/16/2007, and that the driver of the vehicle had fled the accident according to several witnesses who were at the scene that evening.

On 2/19/2008 and 3/4/2008 D.A. Prewitt obtained an illegal Grand Jury Investigation order backdated by Judge Woods to 12/4/2007, whether this order was backdated specifically for Desilets or left open for assisting all law enforcement, it was an abuse of discretion by the Court and by Judge Woods, due to the fact that the accident had not occurred as of that date and did not occur until 12 days later on 12/16/2007.

3

To compound judicial error D.A. Prewitt subsequently issued Grand Jury Subpoena's to aid police officers in obtaining medical records in the medical treatment of Mr. Desilets. D.A. Prewitt signed the Grand Jury Subpoena's and wrote "by Judge" under his signature as if the Judge had signed them herself. Then Subpoena's were sent to area hospitals to obtain medical records on Desilets in a fishing expedition when police could not find the driver of the vehicle involved in the accident which occurred on 12/16/2007.

Consequently D.A. Prewitt, in order to obtain an arrest of Desilets falsified Government documents when he tampered with (fabricated) a Grand Jury Subpoena (a government document) and impersonated a public servant (a Judge) with full intent to induce another (hosp. records admin.) to submit to his pretended official authority (a Judge) and release personal medical treatment records of Desilets.

Furthermore, during the pre-trial hearing, seven days before trial, Judge Hamilton recused herself from the trial and sat visiting Judge from outside the county to preside over the trial. While doing so Judge Hamilton provided no notice and no written order of assignment. Also during the pre-trial hearing, visiting Judge Ernst granted the prosecution a deadly weapon finding, thus only seven days before trial and with a standing discovery order in place, defense counsel objected, but the visiting Judge allowed it.

Defense counsel asked for a continuance of ten days due to the finding and to obtain expert witnesses. However, this request was also denied.

Mr. Desilets also was deprived a fair and impartial trial due to the prosecuting attorney Robert Fryer violating the Rules of Professional Conduct when he provoked and engaged in a physical confrontation (a fist fight) with the defense attorney Choate in the courtroom during trial proceedings. Both bailiffs had to break up the altercation while visiting Judge Ernst did nothing except resume the trial.

Even during the testimony phase of the trial, the States key witness Dr. Troung testified that he did not know who took the defendant's blood test, if there was a chain of custody, or even if it was the defendant's blood test, however, he did testify that the results he was shown had been tampered with and he did not know by whom. A.D.A. Fryer, at this time stated in open Court that he had changed the results of the test before entering it into evidence. Defense counsel again asked for a suppression of the evidence for the above reasons, however, this was also denied.

4

Mr. Desilets was falsely tried and convicted of a crime he did not commit and on May 21, 2009, he was sentenced in open Court when Judge Ernst read the Jury's verdict to the Court running both sentences concurrent.

On June 1, 2009, Approx. 12 days after trial and sentencing, Desilets was transported back to Court, for a special setting, in the Judge's chambers, where prosecuting attorney Fryer was presenting a motion to cumulate the sentences, visiting Judge Ernst reluctantly agreed, signed the motion and quickly left the Judge's chambers. In fact, Judge Ernst left the courthouse completely. Recused Judge Hamilton resumed the case and sentenced Desilets in open Court for a second time thereby illegally cumulating the sentences, and double judging Mr. Desilets.

Mr. Desilets Constitutional Rights have been violated during these proceedings as well as his rights to Due Process and Due Course of Law. Mr. Desilets now seeks relief as briefed below.

## IV.   **GROUNDS FOR RELIEF**

**GROUND ONE**: Applicant's Right To Due Process And Effective Assistance Of Counsel Under Article I Sec. 10 And Sec. 19 Of The Texas Constitution And Under The Fifth, Sixth And Fourteenth Amendments To The United States Constitution Were Violated When Counsel Failed To Investigate Any Avenues Of Defense.

**GROUND TWO**: Applicant's Right To Due Process And Effective Assistance Of Counsel Under Article I Sec. 10 and Sec. 19 Of The Texas Constitution And Under The Fifth, Sixth And Fourteenth Amendments To The United States Constitution Were Violated When His Attorney Failed To Procure An Expert Witness.

**GROUND THREE**: Applicant's Right To Due Process And Effective Assistance Of Counsel Under Article I Sec. 10 and Sec. 19 Of The Texas Constitution And Under The Fifth, Sixth And Fourteenth Amendments To The United States Constitution Were Violated When His Attorney Failed To Investigate Limitations On Consecutive Sentences.

5

**GROUND FOUR:** Applicant's Right To Due Process And Effective Assistance Of Counsel Under Article I Sec. 10 and Sec. 19 Of The Texas Constitution And Under The Fifth, Sixth And Fourteenth Amendments To The United States Constitution Were Violated When His Attorney Failed To Investigate And Interview Eyewitness Testimony.

**GROUND FIVE:** Applicant's Right To Due Process And Effective Assistance Of Counsel Under Article I Sec. 10 and Sec. 19 Of The Texas Constitution And Under The Fifth, Sixth And Fourteenth Amendments To The United States Constitution Were Violated When His Appellate Attorney Neglected Legal Matters Entrusted To Him.

**GROUND SIX:** Applicant's Right To Due Process And Effective Assistance Of Counsel Under Article I Sec. 10 and Sec. 19 Of The Texas Constitution And Under The Fifth, Sixth And Fourteenth Amendments To The United States Constitution Were Violated When His Appellate Counsel Burdened By An Actual Conflict Of Interest Did Not Act With Competence, Commitment, And Dedication To The Best Interest Of His Client While Laboring Under The Conflict Of Interest.

**GROUND SEVEN:** Applicant's Right To Due Process And Effective Assistance Of Counsel Under Article I Sec. 10 and Sec. 19 Of The Texas Constitution And Under The Fifth, Sixth And Fourteenth Amendments To The United States Constitution Were Violated When His Trial Counsel Failed To Object And Seek Relief For Prosecutorial Misconduct.

**GROUND EIGHT:** Applicant's Right To Due Process And Effective Assistance Of Counsel Under Article I Sec. 10 and Sec. 19 Of The Texas Constitution And Under The Fifth, Sixth And Fourteenth Amendments To The United States Constitution Were Violated When His Counsel Failed To Procure An Expert Witness. Specifically, Applicant Complains That The Trial Court Abused Its Discretion And Denied Him A Fair and Impartial Trial By Admitting Into Evidence A Report Containing An Alcohol Level Test Which Was Obtained Illegally And With No Indica Of Reliability, And Trial Counsel Failed To Dispute The Blood Test Results.

6

**GROUND NINE:** Applicant's Right To Due Process, Due Course Of Law And Equal Protection Of Law Under Article I Sec. 10 and Sec. 19 Of The Texas Constitution And Under The Fifth, Sixth And Fourteenth Amendments To The United States Constitution Were Violated When The Trial Court Abused Its Discretion And Denied Him A Fair And Impartial Trial. Specifically, Applicant Complains The Trial Court Erred And Denied Him Due Process And A Fair Trial By Denying His Motion To Suppress, And Lack Of Legal And Factual Sufficiency Of A Grand Jury Subpoena. Applicant Complains That the Court Of Appeals Erred and Overlooked The trial Courts Abuse of Discretion by Denying Him His Motion to Suppress.

**GROUND TEN:** Applicant's Right To Due Process, Due Course Of Law And Equal Protection Of Law Under Article I Sec. 10 and Sec. 19 Of The Texas Constitution And Under The Fifth, Sixth And Fourteenth Amendments To The United States Constitution Were Violated When The Trial Court Abused Its Discretion And Denied Him A Fair And Impartial Trial. Specifically, Applicant Complains The Trial Court Erred And Denied Him Due Process And A Fair Trial By Denying Him An Expert Witness In Lieu Of The Confrontation Clause With No Chain Of Custody.

**GROUND ELEVEN:** Applicant's Right To Due Process, Due Course Of Law And Equal Protection Of Law Under Article I Sec. 10 and Sec. 19 Of The Texas Constitution And Under The Fifth, Sixth And Fourteenth Amendments To The United States Constitution Were Violated When The Trial Court Abused Its Discretion And Denied Him A Fair And Impartial Trial. Specifically, Applicant Complains The Trial Court Erred And Denied Him Due Process And A Fair Trial By Insufficient Notice Of Intent To Seek Affirmative Findings Of A Deadly Weapon, And Denial Of An Expert Witness.

**GROUND TWELVE:** Applicant's Right To Due Process, Due Course Of Law And Equal Protection Of Law Under Article I Sec. 10 and Sec. 19 Of The Texas Constitution And Under The Fifth, Sixth And Fourteenth Amendments To The United States Constitution Were Violated When The Trial Court Abused Its Discretion And Denied Him A Fair And Impartial Trial. Specifically, Applicant Complains That The Court of Appeals Erred And Overlooked The Trial Courts Abuse Of Discretion By Denying Him His Sixth Amendment Right To Confrontation.

**GROUND THIRTEEN:** Applicant's Right To Due Process, Due Course Of Law And Equal Protection Of Law Under Article I Sec. 10 and Sec. 19 Of The Texas Constitution And Under The Fifth, Sixth And Fourteenth Amendments To The United States Constitution Were Violated When The Trial Court Abused Its Discretion And Denied Him A Fair And Impartial Trial. Specifically, Applicant Complains That The Trial Court Erred And Denied Him Due Process And A Fair Trial By The Lack of Jurisdiction Of The Offense And Judicial Misconduct.

**GROUND FOURTEEN:** Applicant's Right To Due Process, Due Course Of Law And Equal Protection Of Law Under Article I Sec. 10 and Sec. 19 Of The Texas Constitution And Under The Fifth, Sixth And Fourteenth Amendments To The United States Constitution Were Violated When The Trial Court Abused Its Discretion And Denied Him A Fair And Impartial Trial. Specifically, Applicant Complains That The Trial Court Erred And Denied Him Due Process And A Fair Trial When He Was Tried By Two Judges In The Same Trial And Sentenced Twice.

**GROUND FIFTEEN:** Applicant's Right To Due Process, Due Course Of Law And Equal Protection Of Law Under Article I Sec. 10 and Sec. 19 Of The Texas Constitution And Under The Fifth, Sixth And Fourteenth Amendments To The United States Constitution Were Violated When The Trial Court Abused Its Discretion And Denied Him A Fair And Impartial Trial. Specifically, Applicant Complains That The Court Of Appeals Erred And Overlooked The Trial Courts Abuse Of Discretion By The Video Evidence Adduced At Punishment Was The Results Of An Unconstitutional Detention.

**GROUND SIXTEEN:** Applicant's Right To Due Process, Due Course Of Law And Equal Protection Of Law Under Article I Sec. 10 and Sec. 19 Of The Texas Constitution And Under The Fifth, Sixth And Fourteenth Amendments To The United States Constitution Were Violated When The Trial Court Abused Its Discretion And Denied Him A Fair And Impartial Trial. Specifically, Applicant Complains That The Court Of Appeals Erred And Overlooked The Trial Courts Abuse of Discretion By The Video Adduced At Punishment Includes Portions Of Unconstitutional Custodial Interrogation.

**GROUND SEVENTEEN:** Applicant's Right To Due Process, Due Course Of Law And Equal Protection Of Law Under Article I Sec. 10 and Sec. 19 Of The Texas Constitution And Under The Fifth, Sixth And Fourteenth Amendments To The United States Constitution Were Violated When He Was Found Guilty And Deprived Of His Liberty For Crimes Of Which He Was Actually Innocent.

## [GROUNDS ONE THROUGH EIGHT WILL BE BRIEFED AS FOLLOWS]

## INEFFECTIVE ASSISTANCE REVIEW ON HABEAS CORPUS

The Sixth Amendment guarantees a defendant in a criminal case not simply the right to counsel but to "reasonable effective" assistance of that counsel. Strickland V. Washington, 466 U.S. 688 (1984).[1] This Case was adopted for Texas Constitutional claims in Hernandez V. State, 726 S.W.2d 53, 57 (Tex.Crim.App. 1996).

In most claims of ineffective assistance of counsel, Texas courts employ the familiar test set forth by the United States Supreme Court in Strickland. This test states that, on general claims of ineffective assistance of counsel, a defendant must show (1) his counsel's performance fell below an objective standard of professional competence and (2) that there is reasonable probability that, but for counsel's unreasonable errors, the results of the proceedings would have been different. Strickland, 466 U.S. at 687-94. The Court's have long stated that "the 'proper procedure' for raising a claim of ineffective assistance of counsel is almost always Habeas Corpus." Aldrich V. State, 104 S.W. 3d 840 (Tex.Crim.App. 2003) (quotation omitted). An applicant may obtain Habeas relief for an ineffective assistance of counsel under Strickland by showing that counsel's performance "was deficient and that a probability exists, sufficient to undermine our confidence in the results, that the outcome would have been different but for counsel's deficient performance." Ex Parte White, 160 S.W. 3d 46, 49 (Tex.Crim.App. 2004).

Specific instances of Counsel's deficient performance will be broken down into eight grounds as follows:

**GROUND ONE** – Counsel's Failure to Investigate any Avenue of Defense

---

[1] The U.S. Constitution's Sixth Amendment Right To Counsel is a fundamental right that is made applicable to the States through the Fourteenth Amendment. See Gideon V. Wainwright, 372 U.S. 335 (1963); see also Argensinger V. Hamil, 407 U.S. 25, 29-33 (1972).

Applicant was denied effective assistance of counsel when his trial counsel failed to investigate any avenues of defense. Specifically, trial counsel failed to investigate available exculpatory evidence which, if presented, would have created reasonable probability that an objectively reasonable juror would have decided that Desilets was not guilty of the crimes against him. There was enough information before trial counsel, including: (1) factual evidence from the police report shows damage to the vehicle on the right side which is consistent with Desilets injuries he sustained as the passenger of the vehicle. The right front and right side damage reflected in the police report shows consistency with the medical records of the injuries incurred by Desilets, which makes obvious he was not the driver of the vehicle. (2) Factual evidence from the police report at the scene of the accident shows that the driver's side air bag was deployed during the accident; however, Desilets medical reports clearly reflect that he had no injuries to his face whatsoever. (3) Factual evidence from the police report shows severe damage to the right side of the vehicle that Desilets was a passenger in, and would explain the reason why Desilets exited from the driver's side of the vehicle, it was the only exit. (4) Factual evidence from the medical report also will explain why Desilets fell upon exiting the vehicle (as told by witnesses) this was due to the injuries he had just sustained to his right hip, knee, ankle, wrist, and ribs, which all were broken, and again consistent with being the passenger of a vehicle in an accident with extensive damage to the right side.

In conjunction with the above facts the vehicle was impounded by the police and counsel failed to obtain any evidence such as fingerprints from the steering wheel, footprints from the pedals, adjustment of the driver's seat, or even the police inventory of the vehicle, which contained Desilets briefcase, Ms. Somerville's purse, extra woman's shoes, along with the thousands of dollars worth of Christmas gifts which were all confiscated by police and held by the State as exculpatory evidence before, during and after the trial. See Exhibit A, auto report and Exhibit B, medical records attached.

Applicant contends that counsel was deficient in failing to investigate the sources for exculpatory or mitigating evidence, that trial counsel's actions did not constitute trial strategy, and that there was prejudice resulting from failing to investigate and present the exculpatory evidence that was available before and during trial.

When considering a failure to investigate claim the Supreme Court has held "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular

10

investigations unnecessary. In any ineffectiveness case a particular decision not to investigate must be directly assessed for reasonableness in all circumstances, applying a heavy measure of deference to counsel's judgments." Strickland V. Washington, 466 U.S. at 691, 104 S.CT. 2052.

## A. FAILURE TO INVESTIGATE CONSTITUTES INEFFECTIVE ASSISTANCE

Defense counsel's failure to investigate potentially exculpatory or mitigating evidence which would be material at trial and would probably affect the outcome of the trial, deprives a defendant of effective assistance of counsel in violation of his constitutional rights.

The Strickland standard affords a measure of deference to trial counsel by way of presumption that a challenged action might be considered sound trial strategy, however, the deference afforded trial counsel's actions as strategic choices is necessarily limited by the extent of counsel's investigation. Ex Parte Briggs, 187 S.W.3d 458, 468 (Tex.Crim.App 2005). Thus, where counsel fails to investigate an avenue of defense or mitigation, counsel's effectiveness should be judged by the reasonableness of that failure to investigate, not the ultimate probability of the avenue's success.

## B. APPLICATION AND ANALYSIS

As explained above, trial counsel's failure to investigate any avenues of defense could not have been strategic. Whether counsel's omissions were due to inexperience or mere inadvertence, this failure to investigate, fell below the objective standards of reasonable conduct contemplated by Strickland.

Counsel's ineffective assistance in failing to investigate undermines any confidence that the outcome would most likely have been different, because, had an investigation been performed a viable defense strategy would have presented itself. Only then could counsel have made an informative decision regarding the strategic avenue most sound at best securing Applicant's interests in a fair trial. The prejudice to Applicant is clear, meeting Strickland's second prong, by counsel's failure to investigate any defense and counsel's failure to provide a sound trial strategy.

11

As a consequence of counsel's actions, Desilets was deprived of his constitutional rights to due process and effective assistance of counsel. Accordingly, Applicant prays that he be granted relief from his unconstitutional confinement. As he so prays below.

**GROUND TWO** – Counsel's Failure to Procure an Expert Witness

Applicant's Right To Due Process And Effective Assistance Of Counsel Under Article I Sec. 10 and Sec. 19 Of The Texas Constitution And Under The Fifth, Sixth And Fourteenth Amendments To The United States Constitution Were Violated When His Attorney Failed To Procure An Expert Witness. Applicant was denied effective assistance of counsel when his trial counsel failed to seek the opinion of an expert witness to assist with the investigation and preparation for Applicant's trial. Applicant's trial counsel did not have any strategic motive for not fully investigating his client's medical reports and accident reports, as well as, using the expert to assist in preparation for the cross-examination of witnesses. "Trial Counsel's financial decision to do nothing about the obvious need to develop evidence concerning his client's medical history and how prosecuting attorney falsified documents to obtain such records, along with accident reports, did not reflect reasonable professional judgment." Wiggins V. Smith, 539 U.S. 510, 534 (2003).

Defense counsel's failure to investigate potentially exculpatory or mitigating evidence which would be material at trial and would probably affect the outcome of the trial, deprives a defendant of effective assistance of counsel in violation of his constitutional rights. Ex parte Amezquita, -- -- S.W.3d -- -- (Tex.Crim.App. 2006) WL3391037. An Applicant may obtain Habeas relief for ineffective assistance of counsel under Strickland by showing that counsel's performance "was deficient and that a probability exists, sufficient to undermine our confidence in the results, that the outcome would have been different but for counsel's deficient performance." Ex parte White, 160 S.W.3d 46, 49 (Tex.Crim.App. 2004).

The Strickland standard affords a measure of deference to trial counsel by way of a presumption that a challenged action might be considered sound trial strategy, however, the deference afforded trial counsels action as strategic choices is necessarily limited by the extent of counsel's investigation. Ex parte Briggs, supra.

Thus where counsel fails to investigate an avenue of defense by the reasonableness of that failure to investigate, not the ultimate probability of the avenue's success.

12

As explained above the trial counsel's limited knowledge of his client's medical and mental history concerning the accident, how prosecution falsified documents to obtain medical history, and accident reports concerning the vehicle damage required him to seek the opinion of an expert, to properly investigate all avenues of defense.

Counsel's ineffective assistance in failing to seek an expert to assist in the investigation undermines the confidence that the outcome would not likely have been different, because, had an investigation been performed into these areas a viable strategy would have presented itself. Only then could counsel have made an informed decision regarding the strategy which was the most sound and best secured Applicant's interest in a fair trial.

As a consequence of counsel's actions, Applicant was deprived of his Constitutional Right to Effective Assistance of Counsel and Due Process of Law. Accordingly, Applicant should be granted relief from his unconstitutional confinement as he so prays below.


**GROUND THREE** – Counsel's Failure to Investigate as to the Consecutive Sentencing

Applicant was denied effective assistance of counsel when his trial counsel failed to investigate the constraints and statutes of the Code of Criminal Procedures § 42.08, and when his appellate counsel failed to challenge the trial court's decision to cumulate the sentences in his original appeal.

The Supreme Court of the United States reviewed and reaffirmed the principal that a cumulation order may not be entered once the defendant has begun to serve his sentence because such would violate the constitutional protection against twice punished for the same offense. Ex parte Barley, 842 S.W.2d 694, 695 (Tex.Crim.App. 1992). Also the defendant must have knowledge that the court is considering the cumulation of the sentences, and defendant must have the opportunity to be heard.

Applicant asserts his trial counsel at no time during the proceedings advised his client that there was a cumulation order even being discussed. Mr. Desilets contends that on May 22nd and May 26th, while his counsel was in hearings before the court, he was not present at those hearings, had no knowledge of any legal proceedings transpiring to cumulate his sentences, and that his trial counsel failed to keep him in the loop and inform him of any such considerations or proceedings.

13

The records from the Montgomery County jail will clearly reflect that Desilets was not at, allowed at or transported to court on either of the above dates, and that Applicant was not returned to court until June 1st, some 12 days after he was sentenced in open court, as documented in the district clerks criminal notes. See Exhibit C page, 2 district clerks' criminal notes.

On June 1, 2009, in Judge's chambers, Judge Ernst, who presided over the case, without any notice to Applicant stacked the sentences and left the court house completely. Subsequently, leaving recused Judge Hamilton to read yet another sentence into open court. See exhibit D, orders of the Court, exhibit E, judgment of conviction by jury, & exhibit H, charge to the jury on punishment with no stacking order.

Applicant contends that 1) a defendant's sentence begins to run on the day it is pronounced; and 2) Attempts to cumulate sentences after the defendant has begun serving his sentence are "void"... Although we disavow the use of the term "void" in Vasquez, and rely upon the Due Process Clause of the Fourteenth Amendment, we otherwise agree with Applicant's position. Once a defendant is removed from the courtroom and begins serving his sentence, it is too late to cumulate the sentence imposed with an earlier one. Gray V. State, 291 S.W.3d 555, 558 (Tex.App. - Houston[14th Dist.] 2009, no pet.) The record indicates that after the court announced the sentence defendant was removed from the courtroom and began his sentence.

Applicant contends that all of the events transpiring with the Applicant's motion to stack are irrelevant anyway because once the sentence was imposed he was taken back into custody, the sentence began to run. Tex. Code Crim. Proc. Article 42.09 § 1, states "a sentence begins to run on the day it was pronounced."

The sentences imposed by the jury began to run on May 21, 2009, and as mandated by T.C.C.P § 1, neither Judge Ernst nor Judge Hamilton had any authority to stack the sentences in violation of double jeopardy. See exhibit E, judgment of conviction dated 06/01/2009, listing date sentenced on 05/21/2009. A trial court does not have the authority to alter or modify a defendant's sentence once the defendant has begun to serve his sentence. Grant V. State, 247 S.W.3d 360, 370 (Tex.Crim.App. – Austin 2008); citing Williams V. State, 145 Tex. Crim. 536, 170 S.W.2d 482, 486 (1943).

14

Federal Courts have widely held that commencement of service of the sentence restricted trial court's power to correct or amend a sentence. E.G. United States V. Sacco, 367 F2d 368, 369 (2d Cir. 1966). This premise underlying this rule was that a sentence once imposed was to be accorded the finality of a jury verdict and could not be increased without placing the defendant twice in jeopardy. The imposition of a sentence, it was reassured, was tantamount to a verdict of acquittal on the possibility of greater punishment. United States V. Benz, 282 U.S. 304, 307, 51 S.Ct. 113, 75 L.Ed. 354 (1939).

Because the trial court did not exercise its statutory discretion to cumulate at the time of the pronouncement, that order must be deleted from the judgment and Applicant's sentences should have ran concurrently. These are basic fundamentals of well established law which both trial and appellate counsel disregarded. An Applicant may obtain Habeas relief for ineffective assistance of performance. Ex parte White, Supra.

Thus, where counsel failed to investigate an avenue of defense or mitigation, counsel's ineffectiveness should be judged by the reasonableness of that failure to investigate, not the ultimate probability of the avenues success.

Counsel's ineffective assistance in failing to investigate the applicable status of law undermines any confidence that the outcome would not likely have been different, because, had this investigation been performed, a viable strategy to get the consecutive motion dismissed would have presented itself. Only then could counsel have made an informed decision regarding the strategic avenue most sound and best securing Applicant's interest in a fair trial.

As a consequence of counsel's actions, Applicant was deprived of his Constitutional Right to Effective Assistance of Counsel and Due Process of Law. Accordingly, Applicant should be granted relief from his unconstitutional confinement as he so prays below.


**GROUND FOUR** – Counsel's Failure to Investigate and Interview Eyewitness Testimony

Applicant was denied effective assistance of counsel and due process of law when his trial counsel failed to interview and investigate eyewitness testimony, counsel's failure to do so rose to the level of constitutionally deficient performance given the gravity of the charges, and the fact that there were only a few adult witnesses to the scene of the accident. Trial counsel relied exclusively on the investigation work of the State and based his own pre-trial

"investigation" on assumptions divined from a review of the States files. U.S.C.A. Const. Amend. 6.

Applicant was prejudiced by trial counsel's failure to object to prosecution who threatened and intimidated Ms. King with incarceration, if she could not positively identify the driver of the vehicle she saw flee the vehicle at the scene of the accident. Threats by prosecution in fact led Ms. King to change her initial testimony for defense before the court. Ms. King testified that she in fact saw the driver of the vehicle flee the scene of the accident, which is the same statement she made to police at the accident scene as an eyewitness on the night of the accident.

An objection by Applicant's counsel would likely have been successful, and counsel's failure to object prevented Applicant from presenting exculpatory evidence in the form of testimony in support of his actual innocence claim.

A prosecutor violates Due Process by threatening criminal consequences for a potential defense witness who is willing to testify for the defendant at trial, and that threat actually intimidates the witness from offering exculpatory testimony.

As briefed in the ineffective assistance of counsel above, and guided by Strickland, several courts have held that counsel's failure to interview eyewitnesses to a charged crime constitutes "constitutionally deficient representation". In Bryant V. Scott, 28 F.3d 1411, 1418 (5th Cir. 1994), the defense attorney failed to interview two eyewitnesses and "restricted his pretrial investigation to discussions with the [defendant], review of the indictment against the [defendant] and examination of the prosecutor's file." Applicant makes claim that information relevant to the defense might have been obtained through better pretrial investigation of the eyewitnesses, and a reasonable lawyer would have made some effort to investigate the eyewitness testimony. Applicant states under Strickland's second prong he establishes "prejudice" – a reasonable probability that, but for counsel's unprofessional errors, the results of the proceeding would have been different. A "reasonable" probability is a probability sufficient to undermine confidence in the outcome, Id. Under the discrete facts of this case Applicant concludes that he has met the substantial burden of both Strickland prongs.

As a consequence of counsel's actions, Applicant was deprived of his constitutional right to effective assistance of counsel and due process of law. Accordingly, Applicant should be granted relief from his unconstitutional confinement as he so prays below.

**GROUND FIVE** – Counsel Neglected Legal Matters Entrusted to Him

Applicant was denied effective assistance of counsel when his appellate counsel neglected legal matters entrusted to him. Even to the point that the Court of Criminal Appeals upon Applicant's filing for an out-of-time petition for discretionary review dated 2/1/2012, ruled on Applicant's request and granted him an out-of-time P.D.R., citing Applicant's appellate counsel's neglect stating "the record reflects that Applicant is entitled to relief, but not due to any breakdown in the system." Also citing Ex parte Wilson, 956 S.W.2d 25 (Tex.Crim.App. 1997). See Exhibit G, Court of Criminal Appeals Opinion.

In citing Ex parte Jarret, 891 S.W.2d 940, 944 "if appellate counsel's action denies a defendant his opportunity to prepare and file a petition for discretionary review, that defendant has been denied his Sixth Amendment Right to effective assistance of counsel." U.S.C.A. Const. Amend. 6, V.T.C.A. C.C.P. Art. 26.04. See Exhibit F, affidavit of Michael T. Griffin.

Applicant complains that he had a right to participate in his appeal, and that appellate counsel's performance, or lack thereof, was objectively unreasonable and prejudiced Applicant's direct appeal.

As explained above, appellate counsel's limited knowledge of Applicant's case and history required him to seek the opinion of his client, to properly investigate, and to include his client in the appeal procedure. Whether counsel's omissions were due to inexperience or mere inadvertence, this failure to include his client on the direct appeal fell below the objective standards of reasonable conduct contemplated by Strickland.

Given Applicant's exclusion from the entire direct appeal process seriously undermines any confidence that the outcome would not probably have been different but for Counsel's ineffective assistance.

As a consequence of Counsel's actions, Applicant was deprived of his Constitutional Right to Effective Assistance of Counsel and Due Process of Law. Accordingly Applicant should be granted relief from his unconstitutional confinement as he so prays below.


**GROUND SIX** – Counsel was burdened by an Actual Conflict of Interest and Did Not Act with Competence, Commitment, and Dedication to the Interest of His Client While Laboring under That Actual Conflict of Interest.

17

Applicant was denied effective assistance of counsel and his right to that counsel under the Texas and United States Constitution on direct appeal before the 9th Court of Appeals of Texas, Beaumont, by Court appointed appellate counsel Mr. Griffin, when Griffin represented his client while burdened by an actual conflict of interest. Appellate counsel at the time of his representing Applicant on direct appeal was still heavily involved with the district attorney's office where he was employed for several years.

Appellate counsel failed to address even the most basic issues on direct appeal for his client and therefore did not act with competence, commitment, and dedication to the best interest of his client. United States V. Williams, 205 F.3d 23, 29 (2nd Cir. 2000), counsel's conduct falls squarely within the range of deficient representation.

Due to the fact Applicant was left in the dark during the entire appellate process, and in spite of several attempts to contact his appellate counsel during this process, it made it very obvious and clear that appellate counsel labored under that conflict of interest and that his client was prejudiced by this conflict. Critically, the Court of Appeal's opinion made clear that the Cuyler Standard applies to all claims of ineffective assistance of counsel due to conflict of interest claims. 16th Amend. to the U.S. Const., Cuyler V. Sullivan, 466 U.S. 355 (1980).

Had Mr. Griffin not been working and laboring under an actual conflict of interest and had Desilets had proper appellate counsel he would not be incarcerated today. Thus, where counsel failed to include Applicant in any part of the direct appeal process, due to his laboring under a conflict of interest and not acting with competence, commitment, and dedication to the best interest of his client, counsel's effectiveness should be judged by the reasonableness of that failure to include Applicant, not the ultimate probability of the avenue of success.

Appellate Counsel's ineffective assistance in failing to include Applicant in the whole appeal process while burdened by an actual conflict of interest undermines any confidence that the outcome of the appeal would not likely have been different, because, had Applicant been included, a viable strategy, to include several constitutional violations upon direct appeal would have presented itself. Only then could counsel have put forth an informed and complete appeal regarding the strategic and most sound appeal best securing his client's interest in a fair appeal.

As a consequence of Appellate Counsel's actions Applicant was deprived of his Constitutional Right to Effective Counsel and Due Process of Law. Accordingly, Applicant should be granted relief from his unconstitutional confinement as he so prays below.

**GROUND SEVEN** – Trial Counsel's Failure to Object and Seek Relief for Prosecutorial Misconduct Substantially Prejudiced Applicant during His Trial. Applicant was denied effective assistance of counsel and his right to that counsel under the Texas and United States Constitution during his trial when trial counsel failed to object to the opposing prosecution's misconduct during trial and failed to seek relief for his client due to that prejudice.

During Applicant's trial prosecution engaged in misconduct by swearing at Applicant and his trial counsel and physically shoving, pushing, and punching Applicant's trial counsel invoking a physical confrontation before the Court, mainly a fist fight until bailiff's were able to break the two men apart. Trial counsel at that time did not object to such remarks by prosecution or the fact that Applicant's counsel was assaulted by prosecution during Court proceedings.

Here plainly a miscarriage of justice has resulted, both counsel's remarks and actions were sufficiently egregious as to constitute plain error and requires a plain error inquiry. These violations not only violated Applicant's rights but have seriously threatened the integrity of the courtroom proceedings.

Consequently, improper suggestions, intonations, and especially, assertions of personal knowledge are apt to carry much weight against the accused when they should properly carry none. Berger V. U.S., 295, 55, S.CT. 629, 70 L.Ed. 1314 (1935). Unfortunately, when a prosecutor does act unfairly, there is little a defendant can do other than rely on his or her attorney to lodge an appropriate and timely objection. A failure to make such an objection can have devastating consequences for an individual defendant. Accordingly, Court's have previously held that a failure to object to professional misconduct can amount to ineffective assistance of counsel. Gravely V. Mills, 87 F.3d 779, 785-86 (6th Cir. 1996); Rachel V. Borden Kircher, 590 F.2d 200, 204 (6th Cir. 1978). Given counsel's failure to object to the misconduct during trial seriously undermines any confidence that the outcome would not probably have been different but for counsel's ineffective assistance.

As a consequence of counsel's actions, Applicant was deprived of his Constitutional Right to Effective Assistance of Counsel and Due Process of Law. Accordingly, Applicant should be granted relief from his unconstitutional confinement as he so prays below.

19

**GROUND EIGHT** – Applicant was Denied Effective Assistance of Counsel When His Trial Counsel Failed to Procure an Expert Witness to Challenge the Only Physical Evidence Against His Client Which Was Obtained and Entered into Evidence Illegally and With No Indica of Reliability. Applicant complains that a qualified expert witness could have brought forth several facts to the jury's attention, which would have changed the outcome of the jury's guilty finding to innocent and let to his client's acquittal on all charges against him.

Specifically, Applicant complains that the trial court abused its discretion and denied him a fair and impartial trial by admitting into evidence a report containing an alcohol level test which was obtained illegally and with no indica of reliability, and that his trial counsel failed to procure an expert witness to dispute blood test results.

## DEFENSE EXPERT WITNESS TESTIMONY

Through use of expert witnesses, the party opposing the admission of the blood test evidence should attempt to bring out evidence of the unreliability of the blood test results in the current case. First and foremost, emphasize that every individual has a different serum or whole-blood ratio and the use of an arbitrary or average conversion ratio does not give accurate results for a particular individual. If an incorrect color cap was used on a vial, or if the anticoagulant or preservative was omitted, this may offer "reasonable doubt" about the integrity of the blood results, particularly if gaps exist in the chain of custody.

For example, the antiseptic used to cleanse the area may contain alcohol in amounts sufficient to produce measurable amounts of alcohol on a gas chromatograph. In emergency room settings, it is routine to use an alcohol-based antiseptic to clean the skin. It may also be routine to use vacutainers and vials that are not in compliance with state regulations and statutes.

An expert witness would have testified to the fact that blood taken from an accident or car crash may also be contaminated if there was an intravenous fluid being administered at the time the blood was drawn. The specimen may be inaccurate either (1) because of the increase volume of fluid in the circulatory system changes the blood alcohol level or (2) the blood may have been drawn from the same extremity that the IV is in, and therefore the sample is contaminated with the intravenous fluids. If there was injury to the defendant, and the paramedics responded, it is very likely that an IV was started in route to the emergency room. Applicant contends that all of the above apply to his cause, and that the failure to provide an expert witness in this area prejudiced him and the outcome of the trial.

20

## SCIENTIFIC AND SURVEY EVIDENCE

Under Texas law, the proponent of scientific evidence must show, by clear and convincing proof and outside the presence of the jury, that the proffered evidence is sufficiently relevant and reliable to assist the jury in accurately understanding other evidence or in determining a fact issue. Tex. Rules of Evid., rule 702.

For a scientific theory to be considered relevant, a proponent must satisfy the following criteria before the proposed evidence may be admitted under Texas law: (1) the underlying scientific theory must be valid; (2) the technique applying the theory must be valid; and (3) the technique must have been properly applied on the occasion in question. Tex. Rules of Evid., Rule 702.

Applicant points out that none of the above Rules of Evidence were applied in his trial and counsel did nothing to dispute the only physical evidence against his client.

As a consequence of council's actions, Applicant was deprived of his Constitutional Rights to Due Process and Effective Assistance of Counsel. Accordingly, Applicant should be granted relief from his unconstitutional confinement as he so prays below.

## THE TOTALITY OF COUNSEL'S INEFFECTIVE ASSISTANCE

The eight grounds of ineffective assistance stated above constructively denied Applicant his Sixth Amendment Right to Counsel as outlined by the Supreme Court in United States V. Cronic, 466 U.S. 648 (1984). If the Court determines these issues fall under Cronic, that Applicant need not prove prejudice under Strickland. However, if the Court decided these grounds fall under the two prong test established in Strickland, the Applicant requests the Court also review the totality of representation as discussed in Ex parte Welborn, 785 S.W.2d 791 (Tex.Crim.App. 1990). The Court of Criminal Appeals laid out the instructions for writ procedures in Ex parte Campos, 613 S.W.2d 745, 746 (Tex.Crim.App. 1981), stating "the parties must provide the opportunity to support or contest allegations amounting to ineffective assistance of counsel." Applicants request the trial Court schedule a hearing to address these claims.

21

**GROUND NINE** – Applicant was Denied His Right to Due Process and Due Course of Law When the Trial Court Abused Its Discretion and Denied His Motion to Suppress an Illegally Obtained Blood Test with No Indica of Reliability, and That the Court of Appeals Erred When It Overlooked the Trial Court's Abuse of Discretion, Allowing the Blood Evidence and Lack of Legal and Factual Sufficiency of a Grand Jury Subpoena.

## MOTION TO SUPPRESS AND LACK OF LEGAL AND FACTUAL SUFFICIENCY OF A GRAND JURY SUBPOENA:

### A. MOTION TO SUPRESS

The Court of Appeals erred in equating the use of deception in the tampering of a document for conviction purposes in a trial Court in violation of Texas Penal Code 37.09 and overlooked the Trial Courts abuse of discretion.

The Trial Court abused its discretion when it denied the motion to suppress a blood serum test results because D.A. Fryer tampered with the M.M.H. blood serum test results and presented it to Applicant and the Trial Court as evidence. D.A. Fryer knowingly intended it to be taken as a genuine medical document in order to convict Applicant in a criminal Court of law. This was a clear violation of Article 38.23 of the Texas Code of Criminal Procedure and thus the evidence of the blood serum test should have been excluded.

D.A. Fryer violated section 37.09(a)(2) "Tampering with or fabricating physical evidence," and section 37.10(2)(a) "tampering with a governmental record" both of the Texas Penal Code. In the instant case the trial Court abused its discretion when it denied the motion to suppress because prosecuting attorney Fryer admittedly tampered with the medical document of the blood serum test results.

The State introduced a blood serum test which had no "Indica of Reliability" standard, and the state provided no witness testimony that would satisfy the standard. Because the state provided no evidence to bolster the reliability and accuracy of the blood serum test, the Court erred in overruling Desilets objection to the evidence allowing the medical report into the record. Dr. Troung, the states expert witness, testified that the blood serum tests results in front of him were tampered with and he had no knowledge of who produced that test results. Prosecuting attorney Fryer admitted in open Court that he had changed the results of the blood serum test

before admitting it into evidence, defense asked at this time for the blood serum test to be suppressed, however, request was denied by Judge Ernst.

## B. ABUSE OF A GRAND JURY SUBPOENA.

Mr. Desilets contends that his Fourth Constitutional Amendment was violated when D.A. Prewitt using a falsified Grand Jury investigation Order dated December 4, 2007, signed by Judge Woods of the 284th District Court, when the accident did not occur until December 16, 2007, to obtain medical records in the treatment of Desilets, D.A. Prewitt then sent the subpoenas to area hospitals on a fishing expedition to further a police investigation, in order to indict, arrest, and convict Applicant in a criminal Court of law. (see Exhibit I. Grand Jury order of Investigation and Grand Jury Subpoena 2/19/08 & 3/4/08 attached).

Mr. Desilets contends that at no time after the accident on 12/16/2007 was he in custody by police, even during treatment at the hospital in which police were present, nor did he believe he was under any restraint associated with an arrest. Guardiola V. State, 20 S.W.3d 216 (Tex.App. – Houston 14th Dist. 2000). In the past, the state has recognized four factors relevant to determining custody: 1) Probable cause to arrest. 2) Subjective intent of the police. 3) Focus of the investigation and 4) Subjective belief of the defendant.

It is obvious from the chain of events that police had no probable cause or interest in arresting Desilets, police at the scene also knew that Desilets was not the driver of the vehicle, and that the driver had fled due to eyewitness accounts, it wasn't until months later when police could not locate the driver who had fled that they focused on Desilets. Otherwise police would have obtained a warrant for a blood test on the evening of 12/16/2007 when they were with Desilets at the hospital. Prosecutor's power to subpoena must not be used as a tool for police officers, U.S.C. Const. Amend. 4 Vernon Ann. Tex. Const. Art. 1. §9.

## C. USE OF A GRAND JURY SUBPOENA TO FURTHER A POLICE INVESTIGATION.

Consequently Courts cannot allow the state to violate a person's Constitutional Rights just to satisfy its desire to investigate a crime. A Grand Jury Subpoena is one of the State's most powerful tools, in this event the State abused and misused this power, thus resulting in an illegal seizure and a breakdown of Desilets constitutional guarantees. The state stepped outside the scope of their authority in abusing the power of the Grand Jury Subpoena. Therefore, we must find that the Court of Appeals decision is ungrounded in the law when the Court admittedly

23

made an assumption not supported by the record, and the obtaining of medical documents was unlawful which resulted in an illegal arrest of Mr. Desilets. See Exhibit J, Subpoena to further a police investigation.

This miscarriage and abuse of a Grand Jury Subpoena also prevented Desilets from obtaining a second sample of blood to be tested independently.

## D. LACK OF CHAIN OF CUSTODY AND ALTERED DOCUMENTS

Mr. Desilets contends when the state abused the Grand Jury Subpoena power to obtain medical records they knew and acted intentionally intending all evidence collected would fall under the business records hearsay exception. Thus allowing them to bring forth false evidence with no "indica of reliability," accuracy, chain of custody, or even proof that it was even Desilets blood test, and that it is non-testimonial in nature.

Dr. Troung, treating physician after the accident, testified during trial that he had treated Desilets when he arrived for severe injuries of his right side (passengers side), Dr. Troung stated he did not perform the blood test, nor did he know who did, nor could he testify to the reliability of the test taken, or even if it was Desilets test at all. However, Dr. Troung did testify the notation of results on the medical report before him containing Desilets blood serum test was not his or his staff's, and left into question the accuracy of the results of the blood serum test.

This lead the Court to believe someone had tampered with the medical documents containing the blood serum test and entered it into record before the Court. Prosecuting Attorney Fryer then stood and stated before the Court that he had changed the results on the medical report containing the blood serum test results stating "just to round it off your honor" before entering the document into evidence. Defense again asked for a suppression of the evidence at that time, however, request was denied by visiting Judge Ernst.

## E. FRUITS OF A POISON TREE

Mr. Desilets concludes the state saw no probable cause to request a blood test at the hospital during treatment even though police were present at the hospital on 12/16/07 for they knew he wasn't the driver but a passenger in the accident, further, he complains after officers could not locate the driver, some months later they focused on him. D.A. Prewitt then to aid a police investigation obtained treatment records with a falsified Grand Jury Subpoena, which in itself was an unreasonable search and seizure under the Fourteenth Amend of the U.S. Const. and Art. 1. § 9 of the Tex. Const. as well as Art. 1.06 of the Tex. Code of Crim. Proc. Desilets also

contends the search was unreasonable and the blood test results were fruit of a poison tree and under the fruit of a poison tree doctrine, evidence derived directly or indirectly from illegal government activity is excluded as trial evidence, especially without a search warrant.

Thus the Court of Appeals erred by not determining the test should have been suppressed at trial. Wong V. U.S., 371 U.S. 471, 484, 83 S.Ct. 407, 91 L.Ed.2d 441(1963), Crosby V. State, 750 S.W.2d 768, 780 (Tex. Crim. App. 1987). Due to the seriousness and overall importance of the violation of Desilets Constitutional Rights; Applicant should be granted relief from his unconstitutional confinement as he so prays below.

**GROUND TEN** – Applicant was Denied His Right to Due Process and Due Course of Law and Equal Protection of Law When the Trial Court Abused its Discretion by Allowing Blood Evidence into Trial With No Chain of Custody and Denied Him an Expert Witness in Lieu of the Confrontation clause.

## A. NO CHAIN OF CUSTODY AND DENIAL OF AN EXPERT WITNESS IN LIEU OF THE CONFRONTATION CLAUSE

Mr. Desilets was denied Due Process and Equal Protection of the Law when visiting Judge Ernst from Walker County, Texas, held Court in Montgomery County, Texas, in the 359th District Court, and failed to suppress Desilets medical records and illegally obtained blood evidence without a chain of custody or a certificate of analysis and because material did not contain facts found to be true as required by clearly established federal law and the Texas Code of Crim. Proc. Ann. Art. § 38.42, Chain of custody affidavit, and §38.42 (1)(3) 1-6 and (5) and Art. § 38.43(a)(2)(B)(b)(c), Evidence containing biological material, Tx. Rules of Evid. Rule 803 (6)(7), Tx. Trans. Code § 724.017(a)(c).

The Texas Code of Criminal Procedures provides that Certificate of Analysis of Physical Evidence and Chain of Custody affidavits are admissible without the declarant appearing in Court if the documents are filed and served on the opponent more than twenty days before trial begins... these relevant statutes were enacted shortly before the U.S. Supreme Court's opinion in Crawford V. Washington, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177(2004). Mr. Desilets addresses that this statutory procedure did not take place and that his Sixth Amendment of the Confrontation Clause was denied. Tx. Rules of Evid. Rule 801(e).

25

During the pre-trial hearing Judge Hamilton recused herself and sat visiting Judge Ernst, who without a chain of custody affidavits and a certificate of analysis denied Mr. Desilets request to suppress blood evidence, and obtain an expert witness to aid in his defense. This placed an unreasonable burden on Desilets ability to exercise his rights under the confrontation clause and to obtain an expert witness to challenge the States evidence against him.

The Supreme Court has held in Ake V. Oklahoma that the Due Process requires that a defendant be given access to the raw materials integral to the building of an effective defense. Ake V. Oklahoma, 470 U.S. 68, 76-77, 105 S.Ct. 1087, 1092 84 L.Ed.2d 53 (1985), this access includes the appointment of experts. Therefore, the trial Court abused its discretion and showed great prejudice by denying Mr. Desilets the necessary expert witness to review the States evidence.

The Supreme Court has also held in Pointer V. Texas, that the bedrock procedural guarantee applies to both Federal and State prosecutions and that the unavailable witnesses out-of-Court statements may be admitted so long as it has adequate indica of reliability and falls within a firmly rooted hearsay exception and bears particularized guarantees to trustworthiness. Pointer V. Texas, 380 U.S. 400, 406 85 S.Ct. 1065, 13 L.Ed.2d 923(1965). However in Desilets case it clearly holds none of the above and the witness against him was kept from cross examination and from trial all together in violation of his Sixth Amendment Right to Confrontation, and calls into question the ultimate integrity of the fact finding process. U.S.C.A. Const. Amed. VI.

## B. DENIAL OF EXPERT WITNESS AND COMPULSORY PROCESS

Article I Sec. 10 of the Texas Constitution provides that criminal defendants have a right to Compulsory Process for obtaining witnesses. Tex. Const. Art. 1 § 10. Further, the Texas Court of Criminal Appeals has recognized that "the right of an accused to have compulsory process for obtaining witnesses on his behalf as guaranteed by the Sixth Amend. is so fundamental and essential to a fair trial that it is incorporated in the Due Process Clause of the Fourteenth Amendment and is applicable to State trials." Brito V. State, 459 S.W.2d 834, 837-38 (Tex.Crim.App. 1970)(citing Washington V. Texas, 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967)).

In the above cause it is not hard to determine from well established Supreme Court Law that visiting trial Court Judge Ernst did in fact abuse his discretion by denying Mr. Desilets an

26

expert witness to build his defense and challenge the States evidence. Along with depriving him relevant testimony of material witnesses that would have provided evidence in support of his actual innocence and that the results would have been different based on factual scientific evidence and testimony.

It is obvious visiting Judge Ernst failed to recognize what his position was as the gatekeeper of science and expert witness of science, and that his unrecognized gate keeping role as a Judge prevented the jury from learning authentic insights and facts in the case by not implementing the general acceptance test instead of just denying Mr. Desilets an expert witness.

The Supreme Court of the United States has held in Daubert V. Merrell Dow Pharm. Inc., that the District Court should act as a reliability gatekeeper in which it imposes a special obligation upon a trial Judge that scientific testimony is not only relevant, but reliable. Daubert V. Merrell Dow Pharm. Inc., 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469. Judge Ernst did not even hold a gate keeping hearing, known in Texas as a Daubert Kelly Hearing, to determine the scientific reliability and validity of the scientific methodology or even allow Mr. Desilets an expert witness who was to testify on his behalf for the defense of his actual innocence. Hernandez V. State, 116, S.W.3d 26, 29-30 (Tex.Crim.App. 2008).

Due to the seriousness and the overall importance of these issues and the violations of Desilets Constitutional Rights, Desilets requests that this Honorable Court schedule a hearing to address these claims. Accordingly, Applicant should be granted relief from his unconstitutional confinement as he so prays below.

**GROUND ELEVEN** – Applicant was Denied His Right to Due Process and Due Course of Law and Equal Protection of Law when the Trial Court Abused its Discretion by Allowing Insufficient Notice of Intent to Seek Affirmative Finding of a Deadly Weapon and Denial of an Expert Witness and that the Court of Appeals Erred when it Overlooked the Trial Court's Abuse of Discretion, Allowing the Insufficient Notice of a Deadly Weapon and Denial of an Expert Witness.

27

## INSUFFICIENT NOTICE OF INTENT TO SEEK AFFIRMATIVE FINDING
## OF A DEADLY WEAPON AND DENIAL OF AN EXPERT WITNESS
### A. DISCOVERY ORDER

Mr. Desilets contends that the Court of Appeals abused its discretion by overlooking a standard order which was in place and required ten days notice before trial to file all motions or amend motions. Thus violating Desilets Constitutional Right to Due Process. This discovery order is contained in the clerk's record dated 5/1/2009, which the State filed a response to before trial, and again on 5/12/2009, where the State filed a supplemental response to the discovery order. This in fact is the same discovery order which was not contained in the record forwarded to the Court of Appeals, and the State disputes whether such a discovery order was entered or even existed. See Exhibit K, clerk's record containing discovery order.

### B. CONSTITUTIONAL RIGHT TO DUE PROCESS

Mr. Desilets Constitutional Right to due process was violated when the State failed to make a timely notice that it would seek an affirmative finding that a deadly weapon was used during the commission of the offense charged against him.

The Court of Criminal Appeals has recognized Article I, Sec. 19, of the Texas Constitution which affords the defendant the right to notice that the State will seek a finding that during the offense the defendant used or exhibited a deadly weapon. Brooks V. State, 847 S.W.2d 247, 248 (Tex.Crim.App. 1993). The defendant's right to such notice is firmly rooted in fundamental precepts of due process and due course of law.

Mr. Desilets asserts he was denied his Constitutional Due Process Right to meaningful notice and a meaningful time to be heard. Lachance V. Erickson, 522 U.S. 262, 266, 118 S.Ct. 753, 756, 139 L.Ed.2d 695, 700 (1989); Ex parte Geiken, 28 S.W.3d 553, 560 (Tex.Crim.App. 2000). Also the notice of a deadly weapon intent was inadequate to amend the indictment and the notice was not provided within the statutory time before trial with a standing discovery order in place. Mr. Desilets was further prejudiced when he was denied a continuance in order to seek expert testimony on issues including the deadly weapon amendment.

Even the Court of Appeals Justice Horton himself acknowledges that the "Indictment is considered somewhat ambiguous about whether the victims injuries were caused by Desilets use of a motor vehicle." Justice Horton also recognizes "notice given eleven days prior to trial has been found sufficient." Applicant asserts if the allegation of use of a deadly weapon was clear

28

from the face of the indictment, there would have been no need for the State's amendment. The indictment in this case did not provide adequate notice that the State would seek an affirmative finding that Applicant used or exhibited a deadly weapon in the commission of the offense at issue. Furthermore, the indictment did not allege that death or serious bodily injuries were caused by a weapon. Because of the construction of the indictment, Applicant was not on notice that the State would seek a deadly weapon finding.

Realizing its error, the State finally provided notice of intent to seek an affirmative deadly weapon finding by correspondence in its amended motion pursuant to TRE 404/609 and Art. 37.07. However, Applicant received said notice only seven days prior to trial. There was no mention to Applicant of the State's intent to seek the deadly weapon finding before this receipt of the amended motion. Applicant's trial counsel objected to the inclusion of the deadly weapon finding in the jury charge, noting his inability to mount a defense by securing the testimony of an expert due to the late notice provided by the State. In addition, Applicant noted the existence of a standing discovery order and the lack of notice on the deadly weapon issue therein. Applicant, accordingly requested a continuance, or alternatively, that the Court refuse the instruction on the deadly weapon finding. The Court denied Applicant's motion.

The Court's denial of Applicant's request for a continuance prevented a proper cure to State's late notice on the deadly weapon issue. Because of the State's failure to provide Applicant with adequate notice, he was unable to prepare his defense in violation of his constitutional right to due process under the Texas Constitution.

## C.    STANDARD TEN DAY NOTICE

Several Court's in Texas have held reasonable notice of a general nature of evidence, other crimes, wrongs or acts that prosecution intends to introduce at trial is at least ten days prior to the start of trial unless defendant or government shows reason to deviate from the presumptive rule. Fed. Rule of Evid. 404, 404(b), 28 U.S.C.A. and as adopted by the State in 404(b)(2) Texas Rules of Evid. Which contends notice requirements includes a notice provision for criminal cases...Hernandez V. State, 176 S.W.3d 821, 825-26 (Tex.Crim.App. 2005). However, if a discovery order makes clear the evidence to be procured, the State's failure to comply will permit a finding of willful failure and lead to the exclusion of the evidence. Oprean V. State, 201 S.W.3d 724 (Tex.Crim.App. 2006).

Both Federal and State Court's have long held that ten days notice is considered sufficient in a number of instances. Appointment of counsel is allowed ten days to prepare. Texas Code of Crim. Proc. Ann. Art. 1.051(e)(vernons supp. 2002); upon request a defendant is given ten days to respond to an indictment or information, Texas Code Crim. Proc. Ann. Art. 28.10(a)(Vernon 1989), notice is presumptively reasonable if given at least ten days before trial. Chimney V. State, 6 S.W.3d 694 (Tex.App. – Waco 1999). Code Crim. Proc. R. 28.01.

At the time it was obvious to the trial Court that defense was actually surprised when the State acted with specific intent to willfully disobey the discovery order, then in final circumstances, the prosecution objected to defense request and trial Judge's consideration to grant a continuance to prepare and obtain an expert witness, this objection in fact showed the prosecutor's full intent.

Due to the seriousness and the overall importance of these issues and the violation of Desilets Constitutional Rights, Desilets requests that this Honorable Court schedule a hearing to address these claims and after these hearings, Accordingly, Applicant should be granted relief from his unconstitutional confinement as he so prays below.

**GROUND TWELVE** – Applicant's Right to Due Course of Law, Due Process and Equal Protection of Law were Violated when the Court Abused Its Discretion and Denied Him a Fair and Impartial Trial. Specifically, Applicant Complains that the Court of Appeals Erred and Overlooked the Trial Court's Abuse of Discretion Denying His Sixth Amendment Right to Confrontation.

## SIXTH AMENDMENT RIGHT TO CONFRONTATION

## A. THE RIGHT TO CONFRONT WITNESSES AND LACK OF TRUSTWORTHINESS OF HEARSAY EVIDENCE OF BLOOD TEST.

The admission of the report containing an alcohol test violated Desilets Sixth Amendment Right to Confrontation, the Court's admission into evidence a medical report containing a blood serum test violated Applicant's right to confront any witnesses against him.

In this ground, Applicant argues the Court of Appeals erred when they failed to recognize a violation of his Sixth Amend. Right to Confrontation of any witnesses against him. Thus

30

calling into question the ultimate integrity of the fact finding process. Ohio V. Robert, 448 U.S. 56, 64 S.Ct. 2538, 65 L.Ed.2d 587 (1980).

The Court of Criminal Appeals has provided that the constitutional right to confront can prevent admissibility even where a hearsay exception is applicable. Applicant argues that the trial Court erred by denying his motion to suppress a blood test taken at the hospital after the accident, he also contends the State violated his Sixth Amendment to confrontation because he was denied the opportunity to cross examine the person who actually took the specimen. State provided no evidence to bolster the reliability of the test and withheld exculpatory evidence from the Court which stated the test was flawed and not to be used for anything other than medical purposes. See Exhibit M, forensic report attached.

The Court of Appeals in its opinion cites Sullivan V. State, 248 S.W.3d 746, 750 (Tex – Houston 1st. Dist. 2008) stating "numerous Texas Courts have held that reports and business records are indeed non-testimonial in nature." However, Applicant makes reference to all Texas Courts have held in Rule 902(10) "unless the source of information, or the method or circumstances of preparation indicate a lack of trustworthiness." Id. Sullivan at 751. Applicant further argues his right to confrontation was violated when the trial Court permitted Dr. Truong to testify about his review of the medical records which were made by someone other than himself. Dr. Truong, the State's expert witness stated at trial that he did not know who took the blood test, who performed the testing or who changed the test results prepared by medical staff.

Applicant was denied the right to confront or cross examine the person who put forth the test and who actually took the blood specimen. He also contends the person who withdrew the blood was not qualified to do so, and was not a qualified technician under the law. Texas Trans. Code Ann § 724.017(a)(Vernon Supp. 2009).

State must prove who took the blood test and whether it was a qualified person under state law. Pham V. State, 175 S.W.3d 767 (Tex. Crim. 2005). This clearly shows evidence was obtained in violation of Texas Code of Crim. Proc. Art. § 38.23. Further, Court of Criminal Appeals reversed, holding, in reliance on Ohio V. State, 448, U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597, that although[801(d)(2)(e)] had been satisfied, the confrontation clause established an independent requirement that the government as a condition to admission of any out-of-Court statements, must show the declarant's unavailability. Which simply reaffirmed a longstanding rule that applies unavailability analysis to the prior testimony of a witness not produced at trial,

cannot fairly be read to stand for the proposition that no out-of-Court statement can be introduced by the prosecution without showing the declarant is unavailable.

The United States Supreme court held that the "indica of reliability" standard must be applied even to well-accepted exceptions to the hearsay rule of exclusion. California V. Green, 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970). The Court requires this test be met because the inability to cross-examine a witness, and therefore to inquire as to their truthfulness and accuracy, is "so important that the absence of proper confrontation at trial 'calls into question the ultimate' integrity of the fact process." Ohio V. Roberts, 448 U.S. 56, 64 S.Ct. 2538, 65 L.Ed.2d 597 (1980).

The Court of Criminal Appeals has provided that the constitutional right to confrontation can prevent admissibility even where a hearsay exception is applicable. Long, 742 S.W. 2d at 314. To uphold that constitutional protection, the Court held that every case where an approved exception to the hearsay rule is at issue must be dealt with on the specific fact of that trial. Id. The court applied the United States Supreme Courts "indica of reliability" standard specifically regarding the business records exception in stating that "[i]t must be determined in each instance whether the particular record is of such trustworthiness as to guarantee the same protection provided by the constitutional rights of confrontation and cross-examination." Porter V. State, 578 S.W.2d 742, 747 (Tex.Crim.App. 1979)

Applicant's Sixth Amendment Right to Confrontation was violated by the Courts refusal to suppress the serum test. The State provided no witness testimony that would satisfy the "indica of reliability" standard. Instead, the States only testimony relating to the test came from a doctor who testified that he did not perform the test and did not make the notation on the medical report purporting to indicate Applicant's blood alcohol level.

Because the State provided no evidence to bolster the reliability and accuracy of the blood serum test, the Court erred in overruling Applicant's objections to the evidence and allowing the medical report into record.

B.    **PREPARATION OF RECORDS FOR LITIGATION**

All medical staff in the State of Texas are trained to prepare documents for legal litigation within the Courts on a daily basis in the course of their duties, and all are aware of which State and governmental agencies will require them, as well as the documents they will receive to release such records, therefore, such records should not be qualified as a business

record for they are prepared daily with the anticipation of legal litigation in a Court of law. Willis V. State, 897 S.W.3d 397, 401 (Tex.App. – Austin 1999). Inadmissible for lack of trustworthiness since documents were prepared in lieu of future litigation. Philpot V. State, 897 S.W.2d 848, 851-52 (Tex.App. – Dallas 1995).

The United States Supreme Court has rejected the contention that public or business records are categorically non-testimonial. Documents kept in the regular course of business may ordinarily be admitted at trial, despite their hearsay status. But that is not the case if the regularly conducted business activity is the production of evidence for use at trial. Melendez V. Diaz, 174 L.Ed.2d at 328. Applicant argues that knowingly Memorial Hermann Woodlands prepares all documents of daily activities in preparation of their regularly conducted business will be evidence used at trial at any given time. Confrontation is one of the means of assuring accurate forensic analysis and is designed to weed out not only fraudulent analysis, but the incompetent one as well. Applicant was denied this violating his constitutional right to confrontation.

Therefore, Trial Court abused its discretion by admitting the business records under the hearsay act with no indica of reliability, and the Court of Appeals erred by overlooking the trial Courts abuse of discretion denying his constitutional rights to confrontation.

Due to the seriousness and the overall importance of these issues and the violation of Desilets Constitutional Rights, Desilets requests that this Honorable Court schedule a hearing to address these claims, and after the hearings, accordingly, Applicant should be granted relief from his unconstitutional confinement as he so prays below.


**GROUND THIRTEEN** – Applicant's Right to Due Course of Law, Due Process, and Equal Protection of Law were Violated when the Trial Court Abused its Discretion and Denied Him a Fair and Impartial Trial. Specifically, Applicant Complains that the Court of Appeals Erred and Overlooked the Trial Courts Discretion of Lack of Jurisdiction of the Offense and Judicial Misconduct.

**A.    TRIAL JUDGES RECUSAL WITHOUT NOTICE**

Trial Court erred when the Courts elected sitting Judge recused herself without notice and sat a visiting Judge from outside the County without a written order or written assignment. According to the Texas Local Govt. Code § 87.001 (Vernon 1989) Judge Hamilton elected Judge of the 359th District Court of Montgomery County, recused herself inappropriately without

33

proper due process under the Texas Civil Proc. § 18(a), seven days before trial at the pre-trial hearing without notice or explanation. Texas Rules of Civil Proc. Rule 18(a) states ten days notice before the date set for trial or other hearings in any Court and Rule 18(a) states prior to any further proceedings in the case....

If the Judge recuses himself, he shall enter an order of recusal and request the presiding Judge of the administrative judicial district to assign another Judge to sit and shall make no further orders and shall take no further action in the case...Rule 18(b)(2).

## B. VISITING JUDGE'S LACK OF JURISDICTION

In this point of error Applicant claims he was deprived of his right to object under V.T.C.A. Govt. Code § 74.053 to visiting Judge who would be sitting the day of the pre-trial hearing. Applicant did not know the identity of the visiting Judge due to the fact there was no notice of assignment or condition of assignment. Republic V. State 60 S.W.3d 877 (Tex.Crim.App. 2001), and in accordance with Texas Govt. Code Ann. § 74.053 (Vernon Supp. 1990).

Applicant further contends with no constitutional or statutory provisions in addition to administrative assignment for Judge Ernst to preside in the 359th Court, Judge Ernst lacked authority to act in such Court and preside over the case. Herrod V. State, 650 S.W.2d 814 (Tex.Crim.App. 1983). Applicant's due process was denied when the Trial Court was conducted by a visiting Judge not assigned in accordance with Texas Govt. Code Ann. § 74. and Texas Govt. Code Ann. §§ 74.091, 74.092. Thus, Judge Ernst was without authority to hear the case and was not properly appointed to the 359th District Court of Montgomery County.

## C. UNPROFESSIONAL CONDUCT, LACK OF JUDICIAL PROCEDURE AND PROSECUTORIAL VINDICTIVENESS

Applicant was denied Due Process and alleges he could not receive a fair and impartial trial due to the fact that his defense attorney Choate engaged in a physical confrontation (a fist fight) in the Court during litigation with D.A. Fryer. Court officers had to break up the fight and separate the two men. Applicant complains that visiting Judge Ernst did absolutely nothing to keep order in the Court, and would not let Applicant ask for a mistrial, explaining to both counselors "I do love you both and we have to proceed with this trial, so let's go," Applicant was denied his right to object and request a mistrial.

34

Although a prosecutor should prosecute with earnestness and vigor, he may not use improper methods calculated to produce a wrongful conviction. E.G. Flaharty, 295 F.3d 182, 202 (2nd Cir. 2002). (Court considered whether prosecutor's remarks were improper and whether remarks infected trial with unfairness violating defendant's due process rights). Marshall V. Hendricks, 307 F.3d 36, 63-64 (3rd Cir. 2002); U.S. V. Williams, 343 F.3d 423, 437 (5th Cir. 2003); U.S. V. Higgs, 353 F.3d 281, 330 (4th Cir. 2003); U.S. V. Beverly, 369 F.3d 516, 543 (6th Cir. 2004).

Applicant asserts that visiting Judge Ernst did nothing and should have declared a mistrial, therefore, Applicant was prejudiced by both D.A. Fryer and the Judge himself, for the failure to supervise or to under supervise the Court staff, which constitutes judicial misconduct. Texas Code of Judicial Conduct Cannon 3(c), which expressively provides that in a Judge's discharge of his or her administrative responsibilities a Judge should require staff, Court officials and others subject to the Judge's direction and control to observe standards of fidelity and diligence and professional conduct that apply to Judges...Texas Code of Judicial Conduct Cannon 3(c)(2).

A Judge is to exercise reasonable direction and control over the conduct of those persons subject to the Judge's direction and control. Id. Cannon 8(b)(11). The failure of the Judge to act on behalf of the defendant was both wrongful and inappropriate and showed great bias and prejudice towards Applicant, therefore, denying him due process which is a constitutional right of any defendant in a criminal case.

Due to the seriousness and the overall importance of these issues and the violation of Desilets Constitutional Rights, Desilets requests that this Honorable Court schedule a hearing to address these claims, and after hearings, accordingly, Applicant should be granted relief from his unconstitutional confinement as he so prays below.


**GROUND FOURTEEN** – Applicant's Right to Due Course of Law, Due Process, and Equal Protection of Law were Violated when the Trial Court Abused its Discretion and Denied Him a Fair and Impartial Trial. Specifically, Applicant Complains that the Court of Appeals Erred and Overlooked the Trial Courts Discretion when He was Tried by Two Judges in the Same Trial and Sentenced Twice in Violation of the Fifth Amendment to the Constitution.

35

## A.     <u>DOUBLE JUDGED AND DOUBLE SENTENCED IN VIOLATION OF THE</u> <u>FIFTH AMENDMENT</u>

Applicant contends at the punishment phase of his trial he was sentenced by two Judges with two different sentences, thus violating his Fifth Amend. Right, Double Jeopardy. Double Jeopardy applies to both successive punishment and to successive prosecutions for the same criminal offense. <u>U.S.C.A. Const. Amend. V</u>, this clause embodies three protections one of them being against multiple punishments for the same offense. Which states "nor shall any person be subject for the same offense to be twice put in jeopardy of life and limb." It is enforceable against the States through the Fourteenth Amendment.

It is well looked at that sentences should be pronounced by the Judge who tried the defendant or before whom the defendant was convicted, however, sentencing may be imposed by another Judge of the same Court where the Trial Judge has died before pronouncing sentence. Applicant state that Judge Ernst, visiting Judge from Walker County, did not die, he just abandoned the case altogether.

On May 21, 2009, Applicant was sentenced in open Court by visiting Judge Ernst after the jury returned the verdict. The sentence was, on Count I of intoxication assault 5 years and a $10,000 fine, on Count II of intoxication assault 6 years and a $10,000 fine, no enhancement to the sentences was delivered by the jury or read into open Court during this sentence phase. See Exhibit H, charge to the jury on punishment.

Applicant points out that no motion to cumulate the two sentences was in place or even presented to the jury during the punishment phase or at any time during the trial. On June 1, 2009, approx. 12 days after trial ended and Applicant had been sentenced Applicant was without any notice transported back to the 359th Court, and behind closed doors, in a special setting in Judge's chambers, D.A. Fryer was presenting to visiting Judge Ernst a motion to stack the sentences, cause No. 08-12-11262-CR-I & No. 08-12-11262-CR-II, thus 12 days after Judge Ernst had already sentenced Applicant in open Court and in front of the jury. See Exhibit E, judgment of conviction dated 5/1/2009.

Visiting Judge Ernst signed the motion and quickly left the Judge's chambers, in fact left the Courthouse completely, leaving Judge Hamilton, recused Judge of said trial to resume the case, again without any order of assignment and sentenced Applicant for a second time in open

Court, this time running sentences consecutively not concurrently as in the first sentence read to the jury in open Court.

Applicant complains he was sentenced twice and Judge Ernst abandoned the Trial Court and Applicant by leaving and not concluding his judicial duties. Applicant again questions the jurisdiction of both Judges for there was no written assignment of orders in place throughout the trial and it seemed as if no one knew at any given time who was presiding over the trial. See Exhibit L, signed and sworn affidavits of witnesses attached.

Further, judgment of convictions on both counts list Judge Hamilton as the presiding Judge over the trial, which is a falsification of court documents. Judge Hamilton recused herself, never heard a motion before the Court, never ruled on any motions during the pre-trial hearing or trial, never addressed any witnesses before the Court, or addressed the jury during trial. Therefore, Judge Hamilton resuming control of the trial after recusing herself and with no order of assignment terminating the former assignment by Judge Ernst, which is still in question, erred for Judge Hamilton should have known, if a specific Judge is assigned to preside in a specific case that assignment must be withdrawn before any other Judge may do so for without an order from the regional presiding Judge terminating the former assignment, they remain wedded.

Double jeopardy clause protects against multiple punishments for the same offense, this is what the U.S.C.A. Constitution Amendment V., assures us, Applicant states the record reflects that he was tried for more than one offense arising out of the same criminal episode and prosecuted in a single criminal action, and a sentence for each offense for which he has been found guilty shall be pronounced at sentence and shall run concurrently. Texas Penal Code Ann. § 3.03(a)(Vernon Supp. 2002). The Texas legislature intended a "single criminal action" to refer to a single trial or pleading. Ex parte Pharr, 899 S.W.2d 795, 796 (Tex.Crim.App. 1995).

Applicant states in according to clearly established law allowing a Judge who recused themselves, to return and read a second sentence into Court and sign as presiding Judge of said case, where the Judge had no knowledge of the case, nor did the Judge hear or decide any motions in the case, may not pronounce sentence.

A sentence is illegal or invalid if it is imposed by a Court lacking jurisdiction. It has also been held that where the judgment of conviction is invalid, and illegal sentence is jurisdictionally defective and an inquiry into the Courts jurisdiction to impose a sentence is a non-waivable

37

issue, and could be brought up at any time. U.S. V. Osborn, Ex parte Padilla, 666 S.W.2d 111 (Tex.Crim.App. 1984).

The above issues themselves gave direct denial of a fair trial and a right to be free from double jeopardy to Applicant, due to judicial misconduct and gross indifference that is beyond all measure and allowance, and to the seriousness and the overall importance of these issues and the violation of Desilets Constitutional Rights, Desilets requests this Honorable Court schedule a hearing to address these claims, and after the hearings, accordingly, Applicant should be granted relief from his unconstitutional confinement as he so prays below.

Further, specific intent to use powers of judicial office to accomplish a purpose for which a Judge knew or should have known was beyond legitimate exercise of his authority may in itself constitute bad faith. Texas Const. Art. V. Sec. 1(a)(16). See Exhibit L. Id. affidavits signed and sworn witnesses, Carlos Landa, Manuel Calderon III, Debra Wilkinson who all testified before Judge Ernst and who were present at sentencing of both Judge Ernst and Judge Hamilton.

**GROUND FIFTEEN** – Applicant's Right to Due Process, Due Course of Law and Equal Protection of Law were Violated when the Trial Court Abused its Discretion and Denied Him a Fair and Impartial Trial. Specifically, Applicant Complains that the Court of Appeals Erred and Overlooked the Trial Courts Discretion by Violating His Fourth and Fourteenth Amendments by the Video Evidence Adduced at Punishment was the Result of an Unconstitutional Detention.

## THE VIDEO EVIDENCE ADDUCED AT PUNISHMENT WAS THE RESULT OF AN UNCONSTITUTIONAL DETENTION

### A. VIOLATION OF THE FOURTH AND FOURTEENTH AMENDMENTS

Mr. Desilets contends that the States evidence at the punishment stage of trial was the fruit of a detention that was not proper under the Fourth and Fourteenth Amendment of the United States Constitution. The burden for showing reasonableness of a warrantless traffic stop lies on the State when a defendant moves to suppress evidence flowing from that stop. Ford V. State, 158 S.W.3d 488, 492 (Tex.Crim.App. 2005); In order for a traffic stop to be valid under the Fourth and Fourteenth Amendment of the United States Const. the officer must have reasonable suspicion that criminal activity has occurred; probable cause is not required. Woods V. State, 956 S.W.2d 33, 35 (Tex.Crim.App. 1997)(citing Terry V. Ohio, 392 U.S. 1, 29 (1968).

38

## B.    INVALID TRAFFIC STOP

Mr. Desilets complains "reasonable suspicion exists if the officer has specific, articulable facts that, when combined with rational inferences from those facts, would lead him to reasonably conclude that a particular person actually is, has been, or soon will be engaged in criminal activity." Castro V. State, 227 S.W.3d 737, 741 (Tex.Crim.App. 2007)(citing Garcia V. State, 43 S.W.3d 527, 530 (Tex.Crim.App.2001)). In a judicial determination of reasonable suspicion, Courts are to consider only the facts known to the officer prior to the stop and subsequent search. State V. Griffey, 241 S.W.3d 700, 704 (Tex.App. – Austin 2007). Pet. ref'd (citing Wong Sun V. United States, 371 U.S. 471, 484 (1963).

Put differently, any evidence found as a result of the stop may not cure an improper detainment. The "totality of the circumstances" is looked at when doing a reasonableness inquiry of a traffic stop. Woods at 38. For a traffic stop to be valid based on weaving within one lane of traffic, there must also be evidence that such weaving was done in an unsafe manner. Tex. Trans. Code Ann. § 545.060(a) (Vernon 1999). Likewise when the articulable facts that form the basis of the traffic stop include one move across a lane dividing line, the move must be done in an unsafe manner. Eicher V. State, 117 S.W.3d 897, 900-02 (Tex.App. – Houston 2003). no pet; State V. Tarvin, 972 S.W.2d 910, 912 (Tex.App. – Waco 1989). pet. ref'd; State V. Ariaga, 5 S.W.3d 804, 805, 807 (Tex.App. – San Antonio) pet. ref'd; Hernandez V. State, 983 S.W.2d 867, 871 (Tex.App. – Austin 1989), pet. ref'd.

At the punishment phase of the trial, the State offered a video recording of Mr. Desilets being stopped and arrested for driving while intoxicated. The arresting officer cited, as a reason for stopping Desilets was that he was weaving within one lane of traffic. In addition, the arresting officer averred that Desilets moved across the white striped line dividing one lane of traffic from another lane designated for the same direction, but did not complete the lane change. The officer also stated as the basis for stopping Desilets was the cars behind him were not passing him. Finally, the arresting officer testified that one of the circumstances that led to the detention was the fact that Desilets was traveling "a little bit below 60 (miles per hour) in a 60 m.p.h. zone and that "hardly anybody does 60 out there."

At no time did the officer state, nor did the State otherwise show that Mr. Desilets weaving within one lane or partial move into another lane was done in an unsafe manner. In

fact, what made this particular traffic stop memorable to the arresting officer was the fact that "[a]fter the arrest he was very, very aggressive, combative, you know among other things."

The set of facts that State adduced as reasons for stopping Desilets do not meet standards set by Texas and Federal Courts in interpreting the Fourth and Fourteenth Amendments of the Constitution. The cited reasons for the stop are insufficient because the officer did not state that Desilets was driving dangerously or in an unsafe manner, and because key memories for the officer were events that took place after the detention began. Mr. Desilets Constitutional Rights were violated because the traffic stop was improperly admitted at the punishment stage of Desilets trial.

Due to the seriousness and the overall importance of these issues and the violations of Desilets constitutional rights, Desilets requests that this Honorable Court schedule a hearing to address these claims, and after such hearings, accordingly, Applicant should be granted relief from his unconstitutional confinement as he so prays below.

**GROUND SIXTEEN** – Applicant's Right to Due Process, Due Course of Law, and Equal Protection of Law were violated when the Trial Court abused its discretion and denied him a fair and impartial trial. Specifically, Applicant complains that the Court of Appeals erred and overlooked the Trial Courts discretion by violating his Fourth and Fourteenth Amendments by the Video Evidence Adduced at Punishment includes portions of an Unconstitutional Custodial Interrogation.

## THE VIDEO EVIDENCE ADDUCED AT PUNISHMENT INCLUDES PORTIONS OF UNCONSTITUTIONAL CUSTODIAL INTERROGATION

**A.     VIOLATION OF THE FIFTH AND FOURTEENTH AMENDMENTS.**

Mr. Desilets contends his Fifth and Fourteenth Constitutional Amendments were violated when the prosecution relied on impermissibly obtained evidence when it produced a video recording which, in part, was an unconstitutional interrogation. The Fifth and Fourteenth Amendments of the United States Constitution afford any accused the right to an attorney's presence during any custodial interrogation. Edwards V. Arizona, 451 U.S. 477, 482, 101 S.Ct. 1880, 68 L.Ed.2d 378(1981).

This right may be invoked at any time before or during questioning. <u>Miranda V. Arizona, 384 U.S. 436, 473-74 (1966)</u>. A custodial interrogation is any questioning begun by law enforcement after deprivation of freedom such as an arrest. The Court of Criminal Appeals states that "Custodial Interrogation is questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." <u>Cannon V. State, 691 S.W.2d 664, 671 (Tex.Crim.App. 1985), en banc, (citing Miranda, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); Mathis V. United States, 391 U.S. 1, 88 S.Ct. 1503, 20 L.Ed.2d 381 (1968); Orozco V. Texas, 394 U.S. 324, 89 S.Ct. 1095, 22 L.Ed.2d 311 (1969))</u>.

In Mr. Desilets punishment hearing the State showed the jury a video recording of a traffic stop for a pending offense for which Desilets was on bond at the time of the incident leading to the present case. During the course of that stop, Desilets was arrested for driving while intoxicated. At no time after the arresting officer announced that Desilets was under arrest did the officer read Desilets his <u>Miranda warnings. (Id.)</u>

Portions of the video recording the State produced at the punishment stage of the trial contained unconstitutional custodial interrogation. The State's use of portions of the video from Desilets arrest on another matter violated his <u>Fifth and Fourteenth Amendment Rights to Counsel</u>.

Due to the seriousness and the overall importance of these issues and the violation of Desilets Constitutional Rights, Desilets requests that this Honorable Court schedule a hearing to address these claims, and after such hearings, accordingly, Applicant should be granted relief from his unconstitutional confinement as he so prays below.

**GROUND SEVENTEEN** – Applicant's Rights to Due Process and Due Course of Law, and Equal Protection Under Article I Sec. 10 and Sec. 19 of the Texas Constitution and under the Fifth, Sixth and Fourteenth Amendments to the United States Constitution were violated when he was found Guilty and deprived of his liberty for crimes of which he was actually innocent.

## <u>CLAIMS OF ACTUAL INNOCENCE ARE COGNIZABLE IN HABEAS CORPUS</u>

In <u>Ex parte Elizondo</u>, the Court of Criminal Appeals held that "claims of actual innocence are cognizable by this Court in a post conviction Habeas Corpus proceeding." <u>947</u>

41

S.W.2d 202, 205 (Tex.Crim.App. 1996)(en banc). The Court went on to formulate an analysis for determining actual innocence claims on the merits;

The petitioner must show by clear and convincing evidence that no reasonable juror would have convicted him in light of the new evidence. Id. at 200

Furthermore, Texas Courts will hear claim of innocence unconnected with a claim of constitutional error. Id. These Herrera-type claims, also known as "bare innocence" claims, are cognizable in an application for writ of Habeas Corpus, because the incarceration of an innocent individual violates due process. Elizondo at 209; see also Ex parte Tuley, 109 S.W.3d 338, 390 (Tex.Crim.App. 2003); Herrera V. Collins, 506 U.S. 390, 398 (1993).

## APPLICANT WAS CONVICTED OF CRIMES
## FOR WHICH HE IS ACTUALLY INNOCENT

Here, Paul R. Desilets, was convicted of, and remains incarcerated for, crimes of which he is actually innocent. See Exhibit J. Mr. Desilets, has maintained his innocence since the allegation that formed the basis of these charges were made. Similar to the Applicant in Tuley, Mr. Desilets fell victim to the coercive tactics of his counsel.

Also very notable is the complete absence of any physical evidence of intoxication assault by Mr. Desilets. In this case, the primary thrust of the evidentiary case prepared by the State consisted of the statements of coached witnesses and witnesses who were threatened with incarceration by the State, fabricated documentation to illegally obtain medical records without a warrant, and tampered evidence brought before the Court by the State.

Applicant has reason to believe that the discovery process permitted in a Habeas proceeding will reveal further evidence that substantially undermines and rebuts the stories of the witnesses. When this evidence is viewed in the context of the limited and unverifiable evidence and no indica of reliability presented by the State, Paul R. Desilets will be able to demonstrate by clear and convincing evidence that he is actually innocent of the crimes for which he is confined.

Due to the seriousness and the overall importance of these issues and the violation of Desilets constitutional rights, Desilets requests that this Honorable Court schedule a hearing to address these claims of actual innocence, and after such hearings, accordingly, Applicant should be granted relief from his unconstitutional confinement as he so prays below.

42

## PRAYER

**WHEREFORE, PREMISES CONSIDERED,** Applicant, Paul R. Desilets, respectfully prays that this Honorable Court set this cause for evidentiary hearing, and after the presentation of evidence and argument, Grant his application for Writ of Habeas Corpus and release him from his unconstitutional confinement.

Respectfully Submitted

Paul R. Desilets
T.D.C.J. #1581093
Goree Trusty Camp
7405 Hwy 75 S.
Huntsville, Texas 77344

43

APPENDIX "F"


OFFICIAL COURT REPORTER CORRESPONDENCE
OF NANCY ELEBY EXPLAINING THAT THERE WERE TWO COURT REPORTERS
IN THE ABOVE CAUSE.

Nancy Eleby
Official Court Reporter
County Court at Law No. 3
301 North Main, Suite 110
Conroe, Texas 77301
September 24, 2014

Paul R. Desilets
T.D.C.J. #1581093
7405 Hwy 75 S.
Huntsville, Texas 77344
Goree Trusty Camp

RE: Cause No. 08-12-11262-CR, I, II
    State of Texas vs. Paul R. Desilets

Mr. Desilets:

I, Nancy Eleby, was the court reporter who reported the above-styled cause number on May 18, 19 and 20th, 2009. The official court reporter of the 359th, Darlene Foreville, provided me with a copy of your letter requesting an estimate for the cost of the trial transcript. The Original Transcript has already been filed with the COA. Your request would be a Copy Transcript. The estimate for a Copy of Volumes 1, 2, 3, 4, 8 and 9, would be $1,033.33. The exhibit volumes are NOT included in that estimate.

If you would like to order a Copy transcript that includes the Exhibit Volumes, the estimate for that would be $1,172. That would include Volumes 1, 2, 3, 4, **5, 6, 7,** 8, 9 and **13**. The Volume numbers in Bold would be the exhibit volumes. I was not the reporter on Volumes 10, 11 and 12. Darlene Foreville reported those volumes.

If you should have further questions or concerns, I can be notified at the address listed above.

Respectfully Submitted,

Nancy Eleby